## MARQUETTE, HOUGHTON & ONTONAGON RAILROAD COMPANY v. PHILIP B. KIRKWOOD AND CHARLES H. KIRKWOOD.

*Liability of carriers of goods for breakage.*

A court has no right to instruct a jury, or suggest to them, that servants or agents of a party, who are called as witnesses, have any such interest as affects their testimony.

Where an action for an injury to goods transported by successive carriers is brought against one of them, it is error to charge that if the goods were delivered in good order to the first carrier, it is inferable, in the absence of evidence, that they continued so until received by the defendant.

One who sues a common carrier for injury to goods must show affirmatively that defendant received them in good order.

A carrier of goods must receive and forward articles on the usual terms and deliver them in the condition in which he received them; he has ordinarily no means of opening packages and examining their contents and has nothing to do with previous dealings with the property by independent carriers.

A carrier of goods acts as agent of the consignee in transferring them to another carrier, and not as the latter's agent.

One who claims damages for negligence must prove the negligence; it cannot be presumed.

A carrier's obligation to carry safely what he received safely is independent of the question of negligence; but in the absence of proof that goods were delivered to him, or delivered safely, any presumption that he received them goes behind his duty and enters into the origin of the contract for carriage, since there is nothing for the contract to act on until the goods come into his charge, and until that is proved, the contract is not.

Error to Marquette.   Submitted October 28.   Decided November 10.

CASE.   Defendants bring error.   Reversed.

*W. P. Healy* for plaintiffs in error.   Carriers cannot inquire into the contents of packages : *Nitro-glycerine Case* 15 Wall. 524; and are not liable on a mere presumption that they have injured goods which have gone through the hands of successive carriers : *Darling v. Bost. & Wor. R. R.* 11 Allen 295 ; *Bowman v. Hilton* 11 Ohio 303.

*E. J. Mapes* for defendants in error.   It is presumed that goods received in good order by one of several successive carriers remain so until they reach the last : Hutchinson on Carriers, § 761; *Dixon v. Railroad* 74 N. C. 538 ; *Smith v. Railroad* 43 Barb. 228 ; *Brintnall v. Railroad* 32 Vt. 665.

CAMPBELL, J.   Defendants in error sued plaintiffs in error and recovered damages for breakage of two marble soda fountains, taken by the railroad agents at Marquette and carried, one to Negaunee, and one to Ishpeming.   The fountains

were packed in New York and forwarded by the New
York Central Railroad, and by that company, as is
claimed, turned over at Buffalo to the Lake Superior Transit
Company, which is a connecting line. The Transit Company
delivered the property at Marquette to the plaintiff in error
with which it had no business arrangements, but which was
the proper carrier from Marquette to the destination of the
articles. The boxes, which were marked to be handled with
care, were then apparently sound except that a handle of one,
consisting of a strip of board, was injured. Each box when
opened at its destination was found to contain a fountain of
which some of the marble was broken.

The testimony for plaintiffs as well as that for defendants
indicates that there was no appearance in either package
which would indicate damages at any time, except the broken
handle. There was no evidence of neglect on the part of
the railroad company, and there was affirmative evidence to
the contrary. It was conceded that the railroad company
had no means of inspecting the property. Under these cir-
cumstances the circuit court told the jury that if the goods
were delivered in New York in good order to the first carrier
they would have a right to infer that they continued so when
received by defendants below, unless evidence was given
which showed the contrary. The court also told the jury
that if they found it necessary to consider the testimony
given by the agents and employees of the railroad, they should
bear in mind the interest they have in protecting their com-
pany and shielding themselves from blame. In doing this a
very similar statement was made concerning the testimony of
the packers in New York.

While there may appear on the trial on direct or cross-
examination such bias or behaviour as would authorize com-
ment by counsel to the jury, we think it is not within the
province of a court to instruct a jury, or suggest to them,
that any suspicion attaches to the testimony of agents or ser-
vants of a corporation or individual by reason of their
employment, or that they have any such interest as requires
them to be dealt with differently from other witnesses. Even

interested witnesses are now let in by statute, and the policy pointed out by the statute indicates that the old presumption that interest will necessarily or probably lead to falsehood, was unjust and untrue. But none of these witnesses could have been excluded under the most rigid common-law rules, and whatever license of criticism may be allowed to counsel, it was not, we think, legally justifiable to invite the jury to look upon such testimony with disfavor. There is no legal presumption against it.

Upon the other question we think that the ruling was also wrong. The case comes directly within the principle laid down by this court in *M., H. & O. R. R. v. Langton* 32 Mich. 251, where it was sought to hold these same parties responsible for delivering hay in a damaged condition, by showing that it was in good condition when delivered to a previous carrier at Sheboygan. In that case as in this the court below held that such a showing shifted the burden of proof upon the railroad company, and we held that this was error, and that the plaintiff was bound to show affirmatively that the hay was delivered in good order at Marquette, to the railroad.

We think this rule is just, and are not at all disposed to depart from it. A carrier has no means in a case like this of opening packages and examining their contents. Unless there is some outward token which is suspicious, he may and must take the articles and forward them on the usual terms. He is bound in law to deliver them in the condition in which he receives them. But there can be no further responsibility; and any rule of law which would make him responsible actually or presumptively for the conduct of previous independent carriers, would be grossly unfair, and subject him to losses against which he could have no protection. He has nothing to do with any of the previous dealings with the property, and no means of informing himself about them. We cannot see how this case is different from what it would have been if the plaintiffs themselves had delivered the boxes to the company at Marquette. In law the Transit Company acted merely as plaintiffs' agent in turning them over, and

cannot be treated as representing the Marquette Railroad Company for any purpose without reversing the whole order of business. *Fitch v. Newberry* 1 Doug. (Mich.) 1.

In view of our previous decision we should not feel justified in going into this question at all, if it did not seem to be imagined that if the case of *Laughlin v. Railway* 28 Wis. 204 had been fully called to our attention it might have changed our views. The other cases cited on the argument, except one from North Carolina following it, do not have any particular bearing. In that case the court, treating it as a question not directly covered by previous precedents, held that it would be more convenient and less onerous to the owners of goods to adopt such a rule as is contended for by the plaintiffs below. The only ground discovered for it was the presumption that things remain as they once have been shown to exist. The cases cited as resting on that presumption were not at all in point except by some assumed analogy.

We certainly have the highest respect for the decisions of the court which so decided. But we cannot convince ourselves that the decision is well founded on legal analogies, or correct in principle.

The presumption that things remain unchanged applies in such a case as the present just as forcibly backward as forward. It may quite as reasonably be presumed that the goods were delivered at Negaunee and Ishpeming in the condition in which they were received at Marquette, as that they came to Marquette as they left New York. The goods were certainly damaged when they reached their destination. To assume that they were damaged after they left Marquette, and not on any of their previous removals, is to make a very arbitrary assumption which has no more foundation in probability than any other. If it were worth while to enlarge on what is confessedly a presumption not resting on any sure foundation in experience, it might very well be questioned whether such a presumption is admissible at all as applied to things the position of which does not remain either fixed in place or free from disturbance by human agencies. But we

need not enlarge on this because the nature of the suit itself raises different presumptions which are well recognized.

This suit is based on the negligence of the carrier. It can only be maintained on the theory that the carrier or its servants did not properly care for or handle the goods. There is no rule better established or more righteous than the rule that any one who claims a right to damages for negligence must prove it. The presumption that a party sued has done no wrong must prevail till wrong is shown. A carrier's obligation to carry safely what he received safely is independent of care or negligence. But in the absence of proof that there was property delivered to him, or safely delivered to him, any presumption that he received it is one which goes beyond and behind the duty of a carrier and enters into the origin and making of the contract. Until such property comes into his hands there is nothing for a contract to act upon, and the contract is not proved until that is proved.

In a somewhat similar case, *Muddle v. Stride* 9 C. & P. 380, Lord Denman told the jury that if it were left in doubt what the cause of damage was, the defendants were entitled to their verdict, "because you are to see clearly that they were guilty of negligence before you can find your verdict against them. If it turns out, in the consideration of the case, that the injury may as well be attributable to the one cause as the other, then also the defendants will not be liable for negligence."

In *Gilbart v. Dale* 5 Ad. & El. 543, the same rule was laid down, and it was held that there could be no recovery without proof, and that the presumption could not be raised without foundation. And in *Midland Railway v. Bromley* 17 Q. B. 372, the same principle was affirmed, and it was held that if the evidence was as consistent with the claim of one side as with that of the other, the plaintiff must fail, because he must make his proof preponderate.

There is no reason for presuming that the Marquette Railroad did the mischief, that would not arise with equal force, according to the Wisconsin decision, against either of the previous carriers had they been sued instead. Had the first

carrier been sued it would unquestionably have been bound to show a safe transit, because that carrier received the articles in actual good order. A presumption that has no better foundation, and that applies to one as readily as to another, ought not to prevail to raise a further presumption of negligence without proof.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.