GEORGE J. ROBINSON v. CHARLES WRIGHT & COMPANY (A CORPORATION).

*Master and servant—Injury to employé—Contributory negligence—Defective appliances.*

1. Where an employé is familiar with a freight elevator, its construction, and use, and knows that, unless the brake is properly set and locked, a weight placed upon the car will cause it to descend, and that the brake must be set according to the weight of the material placed upon it for carriage, it is his duty to see that the brake is properly set and locked before using the elevator.

2. The sudden breaking or giving way of a piece of machinery, properly constructed, is not sufficient to justify the conclusion of negligence.

Error to Wayne. (Reilly, J.) Argued October 25, 1892. Decided December 23, 1892.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*James H. Pound (Charles Kudner* and *Edwin F. Conely,* of counsel), for appellant.

*George W. Radford* and *Edward A. Barnes,* for defendant.

GRANT, J. Plaintiff, while in the employ of the defendant, rolled a barrel weighing about 250 pounds upon the elevator, placing it on one side. He then rolled a second barrel on, when the platform commenced to descend, and

·went suddenly to the bottom, carrying plaintiff with it, and injuring him.

The car of this elevator consists of a platform about six feet square, with two posts rising from the middle of opposite edges, about six feet high, connected and braced at the top by a crossbeam. These posts travel up and down two guides extending from the top to the bottom of the elevator shaft, and serve to hold the platform of the car level, and prevent its swaying from its position. Two heavy iron hooks are screwed into the floor of the platform, one at the side of each of the posts. Across the top of the elevator opening or shaft, and in a direction parallel with the crossbeam of the elevator car, is hung a piece of steel shafting with several wheel pulleys keyed upon it. Two ropes, into the end of each of which is spliced an iron ring or eye, are fastened to the platform of the car by slipping these rings over the hooks mentioned above. These ropes, passing up through the elevator shaft over two of the wheel pulleys upon the steel shafting above and down on the other side, are attached to two very heavy weights, which travel up and down guides on the sides of the elevator shaft, and serve to counterbalance the weight of the car; the weights moving up as the car moves down, and *vice versa*. The wheel pulleys over which these ropes pass have V-shaped grooves in their rims, to prevent the ropes from slipping around, by causing them always to fit tightly in the grooves, no matter how much worn they may be. The elevator is operated by hand power, by pulling up and down on an endless rope, which passes over a wheel pulley geared to the same shafting that carries the pulleys over which the balance ropes run. This pulley also has the V-shaped groove in its rim, and, when any one pulls up or down on the endless rope, the shafting revolves, and the elevator is moved up and down by the balance ropes. The brake is a device for tightening

an iron band that is hooped over another pulley fastened
into the shafting.   This band is tightened over the pulley
by pulling down on a rope fastened to the end of a lever
attached to the hoop.   After pulling on this rope until
it is as tight as desired, the brake is locked (before letting
go of this rope) by pulling on another rope, which drops
a ratchet into notches on the brake lever, the arrangement
being similar in principle to that by which a railroad brake-
man sets a brake with his toe.   To unset the brake it.
must be tightened a little more, when the ratchet will
drop out of the notch, and release the lever.

The allegation of negligence in the declaration is of the
most general character, consisting of the statement that the
defendant negligently suffered and permitted the elevator
to become and to be and remain worn out, broken, and
defective, and in an unsafe and insecure condition, and
unfit for use.

After the accident it was found that one of the balance
ropes had become detached, the eye having slipped off the
hook, and the weight attached to the opposite end had
fallen to the cellar.   It was also found that the key or
pin which held the wheel on the axle above had come out.
When this key was out, there was, of course, no control of
that side of the elevator.

The court submitted the question as to plaintiff's con-
tributory negligence and defendant's negligence to a jury,
who found a verdict for the defendant.

We deem it unnecessary to discuss the various errors
alleged to have been committed during the progress of the
trial, for the reason that the jury rendered the only verdict,
that can be justified by the undisputed facts and the law
applicable thereto.   Where the correct result is reached,.
the errors alleged are immaterial.   We think the court,
under the evidence, should have directed a verdict for the
defendant.

1. The plaintiff did not show himself to be free from negligence. He was entirely familiar with the elevator, its construction, and method of use. He knew that, unless the brake was properly set and locked, a weight placed upon the car would cause it to descend. The brake must in all cases be set according to the weight of the material placed upon it for carriage. For a heavy weight it should be set harder than for a light one. It was therefore his duty to see that the brake was properly set and locked, and his duty to prove it upon the trial. His testimony upon this point was as follows:

"I do not remember where the elevator was when I first wanted to use it. It might have been on the floor below. I do not remember how the elevator got there, or whether I tried to see if it was solid, or put my hand on the brake from the beginning to the end, if I brought the elevator up. If I did, I would have to tie the brakes, or the elevator would have gone still higher. It would not have stopped if I had not put on the brakes. It would have gone up. I did not try the brakes after I got the first barrel on; and as I was putting the second barrel on the elevator went down."

It thus appears that the plaintiff rolled two barrels upon the elevator platform without first directing his attention to the brake, and seeing that it was properly set. The elevator had just before raised a weight of 1,500 pounds in safety, and the brake was found sufficient to control it. A proper regard for plaintiff's own safety and for the safety of the property of his employer required him to take this necessary precaution. Having failed to show this, he was not entitled to recover. In my judgment, a recovery under such circumstances has no foundation either in law or justice.

2. Plaintiff's proofs failed to show any negligence on the part of the defendant. Whatever other authorities may hold, it is the settled rule in this State that negligence cannot be inferred from the mere proof of an accident and

consequent injury. *Toomey v. Steel Works*, 89 Mich. 249, and authorities there cited. The sudden breaking or giving way of a piece of machinery, properly constructed, is not sufficient to justify the conclusion of negligence. Machinery well constructed, apparently safe, and having been tested by use, often gives way from some hidden cause or unknown defect.

This elevator had been in constant use for a long time, and had, without accident, performed the work for which it was intended. The fact that once before it had descended in a manner similar to that in the present case, is not evidence that it was out of repair, as in that case the accident may have resulted from the failure to set and lock the brake. The slipping of the hook was unquestionably the result of the fall, rather than its cause. This is conceded by the plaintiff's counsel, for they say in their brief that there is no evidence that the rope became detached before it fell, and that, if it had been so detached, the car would have locked itself upon the slides. All the witnesses familiar with the elevator, and who examined it just after the accident, agree that all the parts of the elevator were in proper shape and condition, except that the key which held the wheel upon the shaft was out, and the hook was out of the ring. There is no evidence that the key was out before the accident, or that it was loose. The strain upon this wheel and the shaft by the fall of this heavy weight, almost unchecked, for 30 feet would be very great. The heavy balance weights, upon the sudden stoppage, would fly up, and then fall back upon the wheel with great force. That the key was not out, but was in fact in place, at the time plaintiff commenced to load the elevator, is certain. This appears from the facts, as already stated, that it had just carried up a heavy load, and that, if out, the elevator would have at once descended when the first barrel was rolled on.

Negligence cannot, therefore, be predicated upon the theory that the key was out, and that this caused the fall. There is no evidence to show that it was loose before the fall, or that the ordinary use of the elevator would tend to loosen it. Plaintiff gave no evidence tending to show a necessity to inspect this pin for the reason that it might become loose. It is certainly as consistent with the theory that the key was jarred out by the sudden and great strain upon it as that it had become loose from ordinary use. In such case it is not competent for the jury to guess which theory is correct.

Under the undisputed facts in the case, the testimony of the witness Perry, as to the condition of the elevator when he worked for the defendant, becomes immaterial. He left defendant's employ six months before the accident. The elevator was overhauled and repaired after he left, and about three months before the accident, and there is no evidence showing any difficulty in running it after that time.

Judgment affirmed.

LONG, DURAND, and MONTGOMERY, JJ., concurred with GRANT, J.

McGRATH, C. J. (*dissenting*). Plaintiff was injured while in defendant's employ, by the fall of a hand elevator car, upon which he was loading some freight. The jury found for the defendant, and plaintiff appeals.

Plaintiff was directed by the superintendent to remove two barrels, containing liquid, and weighing about 250 pounds each, from the second floor to the basement. While putting the second barrel on the car, the car suddenly gave way, and fell to the basement, carrying plaintiff with it. Plaintiff says:

"I rolled the barrels on the usual way. The platform was just wide enough to hold two barrels, and it was about square, so that four barrels filled the platform. As I was

letting the second barrel down after I rolled it on its head, the whole thing went down, and I followed head first. Something broke about the elevator, and we all went down together."

After the fall, it was discovered that the key pin that held one of the spools or pulleys upon the shaft was out, and that the rope which passed over another pulley, and was attached to the car, had become detached. The ropes were attached to the car by hooks in the car, and an eye in the end of each rope. Whether these conditions were caused by the concussion of the car with the basement floor, or prior to that time in some other way, does not appear.

One witness says that this elevator had been in use 15 years; another that "it was an old elevator." One of the plaintiff's witnesses says that in October, 1888, while he was at work for defendant, it was—

"In a very bad condition. The brake was in bad shape. It would not catch every time; and a number of times, when I was working in the shipping room, one of us would have to hold the brake at the ground floor, while another man ran to the top floor and put on the brake. The catch that held the brake would not hold it. It would go down on one side; and it was seen that the rope was loose, and slipped off the pulley at the top. It did not work smoothly. I called Mr. Wright's attention to it at least a half a dozen times. Whenever the elevator got broke in any way he would have it fixed, but the brake he never fixed from the day I went there until I left [October 19, 1888]. * * * I knew the elevator was out of repair. I did not report it every time I noticed to Mr. Wright, because he never used to pay much attention to it when we did. He did not always have it fixed when I reported it out of order. He never had the brake fixed. I complained of that half a dozen times anyway, repeatedly, to Mr. Wright himself. He knew the brake was out of order. I talked with him about it. I say I reported it to him frequently, and he did not have it fixed."

Another witness, who was in the employ of the defend-

ant when plaintiff was hurt, speaking of the elevator, says: "I had seen it in operation, and had operated it myself. It was rickety all through."

This was the second fall of this elevator car. The first occurred some time before the injury to plaintiff. After that defendant notified its employés not to ride upon it. It was operated from each floor. The superintendent says:

"After we got the load on at the cellar we would begin to pull the rope after taking off the brake. We would have a man on each floor above to pull the rope."

Mr. Wright testified:

"I can't say that it was ever reported to me that there was anything the matter with the brake. If it was, it was attended to at once. Prior to the accident, I had no knowledge the elevator was out of order. There had been no complaint made to me about the elevator for some little time."

Expert testimony was introduced by defendant tending to show that the striking of the car upon the floor of the basement might have caused the disconnection; that, if the key pin had been out on one side, and the eye in the hook on the other, the car could not be operated, and could not fall, unless the guides spread, because the car would bind; that, if the key pin was out on one side, and the rope disconnected on the other, the car could not be operated, and would fall; that the brake might hold the car in position, even with the weight on, the key pin out on one side, and the rope disconnected on the other; that, if the brake was not on, the car, under such circumstances, would fall with its own weight; that, if the brake was not put on, the weights would force the car up from the second floor, and, if the machinery was in proper condition, and the brake was not set, the car would go down with the weight of one barrel, weighing 250 pounds, on it; that the

brake may not have been set tight enough; that, if the brake had been set tight enough to hold 250 pounds, and not tight enough to hold 500 pounds, the car would go down, but in that case it would start slowly, increasing in velocity as it descended.

At the close of plaintiff's testimony, counsel for defendant, addressing the court, said:

"I fail to see that any evidence is before the jury to make out a case for the plaintiff, and I move that the jury be directed to find for the defendant, on the ground of contributory negligence.

"*Court:* I don't think the question of contributory negligence applies. I will overrule the motion. Note an exception. I think the question is very close, but I will give the plaintiff the benefit of the doubt."

We think the language of the court, taken in connection with other remarks interjected by the court pending the trial, was calculated to impress the jury with the court's opinion of plaintiff's case, and was therefore erroneous. To illustrate: Defendant called a witness, who testified that he owned the building occupied by defendant, and put in the elevator. The witness, continuing, said:

"I could not say, while defendant has occupied the building, I have done anything more than have the repairs made that my attention was called to by Mr. Wright. He has called my attention to some, but I could not tell when they were, except they were likely prior to 1889.

"*Q.* Will you state to the jury the nature of the complaint that he made, and what repairs you have made prior to 1889 ?

"*Mr. Pound:* I object to it. The repairs he don't remember about.

"*Court:* Answer the question. (Exception for plaintiff.)

"*A.* I could not say anything in particular in regard to that matter. If anything was the matter, Mr. Wright notified me.

"*Court:* Well, was there anything the matter ?

"*A.* Not that I know of.

"*Court:* Then, why didn't you say so ? You were asked for a fact."

The question by the court was not a proper one. The witness only knew what Wright had told him.

Mr. Wright, sworn for defendant, testified that he had positively prohibited the use of the elevator, except by certain employés. On cross-examination, being asked who represented him in his absence, counsel asked who had charge "in an emergency." "*Court:* You are asking him about facts. Every man is supposed to have control of his own business." The question was a proper one, and the remarks of the court improper.

A witness for defendant had testified to the condition of the hook referred to when found. Continuing, the witness said:

"The bending of the hook may have happened in the fall. It might have been bent and I not able to detect it.
"*Q.* (on cross-examination). The only way you could tell was by a pair of calipers, and measuring before and after the accident?
"*A.* Yes, sir.
"*Court:* Is there any evidence that any one ever struck that hook to bend it?
"*Witness:* No, sir. (Question objected to as incompetent and immaterial, and exception for plaintiff.)"

Juries very properly place much reliance upon what is said by the trial judge, and courts should direct, rather than influence respecting the facts by intimations during the progress of the trial. When plaintiff's case as made is such, in the opinion of the court, as to warrant the direction of a verdict for defendant, the direction should be given, and in such case the expression of the court's opinion cannot prejudice, but, upon a refusal to direct a verdict, the court should refrain from any expression upon the facts calculated to convey to the jury the court's opinion of the case as made.

The superintendent, a witness for defendant, was asked by defendant's counsel:

"*Q.* Do you know whether his [plaintiff's] duties required him to do anything with the elevator?

"*A.* I don't think they did, sir.

"*Q.* What makes you think that way? (Objected to as incompetent. Overruled, and exception.)"

The witness then proceeded to give argumentative reasons why he thought so.

One of the building inspectors testified that the board had a code of rules upon which they operated all elevators.

That code of rules was, under objection, offered and received in evidence. Counsel for defendant, referring to to said rules, then put the following:

"Now, with reference to running, 'that the speed of passenger elevators be not more than 90 feet per minute, and freight elevators not more than 60 feet per minute,' I ask you if this particular elevator was so constructed as to make this rule applicable? (Objected to as incompetent and immaterial. Objection overruled, and exception.)"

Plaintiff was recalled after the defendant had rested, and asked if, in the interview at plaintiff's house, the witness Hanmer said anything about what happened to him at the elevator.

"*Court:* What was the question you asked Hanmer?

"*Mr. Pound:* The question was whether or not, at the interview he designated at plaintiff's house, after the plaintiff was injured, if he did not say he came near having an accident himself a few days before, and he would not have anything to do with the elevator, or words to that effect; and he denied having said anything of that kind, and I simply desired to ask this young man as to that; Hanmer having testified that the elevator was in good shape."

The court excluded the testimony. These rulings were erroneous, so clearly so that it is unnecessary to discuss them.

One of the defendant's employés was asked:

"What can you say as to orders prior to the accident with reference to the use of the elevator?

"*A.* It has always been, since I have been in the house, known to be against Mr. Wright's orders, and against all orders, for anybody to get on the elevator at any time."

A similar question was put to other witnesses, and answered under objection. This was error. *Fox v. Color Works,* 84 Mich. 676.

One of defendant's witnesses had testified that plaintiff, after the injury, had done the same work as he had before the injury. On cross-examination, plaintiff's counsel asked witness if it was not a fact that one Stackpole, immediately upon plaintiff's coming back, assisted him with his work, and was so delegated to do. The court, of its own motion, excluded the testimony. This was proper cross-examination, and the court erred in excluding it.

Plaintiff's counsel requested the court to instruct the jury as follows:

"4. If the jury find that the defendant's superintendent, Mr. Furlong, directed plaintiff to remove the refuse, and the plaintiff was proceeding so to do in a careful and in the usual manner, and was injured by the negligence of the defendant and its agents in not exercising ordinary care in having safe machinery, then plaintiff is entitled to recover.

"5. The notice given by Mr. Wright, even if believed to have been given, would not absolve the defendant from the exercise of ordinary care to provide for the safety of its employés, if Mr. Furlong overrode the same by having plaintiff and others, not specially designated, assist in running the elevator.

"6. There is no evidence in this case that the plaintiff was doing, or was about to do, other than load the elevator with goods to be moved by the direct commands of his superiors in defendant's employ."

These requests were not sufficiently covered by the instructions given. Defendant Wright had testified that he had committed the exclusive use of this elevator to certain designated persons, had prohibited all other employés from its use, and had notified all his employés:

not to ride upon it; and a large portion of the testimony was to this effect. There was no testimony tending to show that plaintiff was riding upon the car, or went upon it for that purpose. The court alluded to the claim of the defendant—

" That this young man had no right to use the elevator; that it was no part of his duty or his work down there to use the elevator as he was using it at the time of the accident."

Plaintiff, under the circumstances, was entitled to specific instructions upon these points.

The court, in the instructions given, alluding to the detached rope, said:

" Now, when did that become detached? Was it from the fall, or was it detached at the time the plaintiff in this case attempted to put the second barrel upon it? If it was, gentlemen of the jury, detached at that time, it was his duty to have noticed it. If he saw the cause of the fall of the elevator, and that rope was detached at the time he put these barrels on, then there could be no recovery in this case."

Again:

" The other question, as to the negligence necessary for the plaintiff to show, I have referred to, and also the question of his action as to contributory negligence. Now, as I have said, if this hook was unfastened at the time he put these barrels upon the elevator—
"*Mr. Pound:* And could be discerned, I suppose.
" *Court:* There is no doubt it could be discerned. That I would leave to you as a question of fact. It was there in plain sight. The hook was attached to the bottom of the elevator. It was one of the ropes that raised up the elevator, and it was his duty to observe it. It being there in plain sight, *under the evidence in the case, he would not be justified in attempting to use as dangerous a piece of machinery as this elevator, without ascertaining whether it was in proper condition to be used.* And if it came through this hook being unfastened,—if that was what caused the fall,— and he could have seen that, *and did not see it,* then I say to you, as a matter of law, he is not entitled to recover on

the ground of contributory negligence. In a large business, such as the defendant is carrying on, it has to operate through its employés, and every one of its employés must use the senses with which God has endowed him in performing the duties devolved upon him by reason of his employment."

Counsel for plaintiff, during the charge, asked the court to say to the jury that—

"If, while the plaintiff was putting on the barrels, the hook and eye were connected up to the time, and they separated in putting them on, he would be under no fault."

The court then said to the jury:

" If this hook was in the eye at the time this barrel was rolled upon there, and the pin was in the shaft at the time, so that the plaintiff in this case could not see it, and on this account the elevator fell, then he is not liable for contributory negligence; nor would the defendant be liable in this case, if he had used ordinary care in keeping that machinery in proper condition. If that pin had become loosened through the use of that elevator in the morning, so that no one of the employés, in the exercise of ordinary care and diligence in the use of the machine, could have discovered it, and the accident came in that way, then the defendant is not responsible. It is one of those unforeseen and unavoidable accidents that the law does not hold anyone responsible for."

In the instructions given, the court in effect placed the burden of inspection upon plaintiff. This was error. Plaintiff had a right to assume that the apparatus was reasonably safe for use. He assumed such risks as were incident to the use, and such as arose from apparent defects, or defects of which he had knowledge, in the machinery or apparatus. He is held to a degree of care in the use corresponding with the danger involved, but he was not charged with the care or inspection of this elevator, and did not assume any risk incident to defects which were not apparent, and of which he had no knowledge.

There was, however, another theory upon which plaintiff

was entitled to go to the jury, viz., that the brake was defective. There was no testimony in the record that this brake had been repaired after the witness Perry left defendant's employ, nor was there any testimony tending to show that plaintiff was aware of this condition. The court's instruction was calculated to impress the jury with the idea that it was the duty of plaintiff to ascertain and discover the existence of this defect, and, further, to exclude the question of the existence of this defect from consideration by the jury.

The question as to whether the elevator was in a defective condition, and that defective condition occasioned the fall, should have been left to the jury under all the facts. If the jury became satisfied that the elevator was defective, and that such defective condition caused the accident, they should next determine, under proper instructions, whether the defendant had exercised reasonable care and supervision. The law imposes upon the master a duty to the servant not only to provide reasonably safe machinery and appliances, but to keep the same in reasonable repair. This duty is a continuing one. The degree of care to be exercised must be in proportion to the dangerous character of the appliance, and the liability to accident and injury in the absence of such care. Where, as here, a defect in the apparatus is liable to endanger the life of the servant, the master is bound not only to repair upon the discovery of the defect, but he is held to supervision, examination, and inspection. Negligent ignorance of defects is equivalent to actual knowledge of their existence. A master cannot be said to have exercised reasonable care who relies upon servants, charged simply with the use of appliances, to report defects, or who relies upon accidents to disclose them.

Defendant is not bound to show that no defect existed in fact, but only that it has performed the duty which the law imposes upon it, viz., that of reasonable care, super-

vision, and examination. It is urged that the elevator had been used shortly before this accident to carry a much greater load; but it does not follow that the elevator at the time was in good order. A time comes when defects manifest themselves. The key pin and the detached rope may or may not have been the cause of the accident. But, conceding that the key pin falling out was the primary cause, yet key pins do not shoot out from their proper place into space in a moment. They become loose gradually. The machinery was in a defective condition after the key pin started, and it may have started some time before. So, too, of the hook and eye. It does not follow that the condition of the hook was produced just at the moment that the car started upon its fall. If it had been sprung so as to admit of the escape of the eye, that may have been done a week or month before that time. The object of inspection is not to see whether the key pin and the rope eye are out, for these conditions manifest themselves, but it is to ascertain whether either is liable to get out. The master will not be permitted to screen himself from liability because he did not in fact know that the key pin was loose, and liable to fall out, or that the hook had been sprung, and the eye likely to get out, if he has omitted such reasonable and proper inspection by competent persons as might have disclosed such condition. *Cooper v. Railroad Co.*, 24 W. Va. 37. Ignorance on the part of the master will be negligence in a case in which any proper inquiry would have obtained the necessary information. 2 Thomp. Neg. 996. If the master knew of its defective condition, or ought to have known, and the servant did not know, and was not bound to know, of its defective condition, the liability of the master—the servant being in the exercise of due care— is fixed. Id. 992.

If the elevator fell because of defective condition, and

the master fails to show reasonable care and inspection, he must be held liable, unless it be that the servant knew of the defect, or it was such an apparent defect that he ought to have known of it, or he was himself guilty of carelessness in the operation of the elevator, and thereby caused or contributed to the accident. A servant, however, who is not charged with the duty of the care, supervision, or inspection of an elevator, is only chargeable with knowledge of such defects as are apparent to ordinary observation in its use.

The judgment should, therefore, be reversed, and a new trial ordered.