### SARGEE v. CLARK CAN CO.

INJURY TO EMPLOYÉ—NEGLIGENCE—EVIDENCE.

*Under the facts presented in this case, there was no evidence of negligence on the part of the defendant, and the cause of the accident rests in mere speculation, unless it is accounted for by the contributory negligence of the plaintiff. MONTGOMERY, C. J., dissenting.

Error to Wayne; Frazer, J. Submitted February 12, 1901. Decided May 7, 1901.

Case by Charles Sargee, by next friend, against the Clark Can Company, for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

Plaintiff recovered a verdict and judgment for an injury to his hand. The declaration sets forth that the defendant used a certain machine, called a "stamp press," used for stamping teakettle covers, operated by means of a lever, by which the die was moved up and down; that, when it was required to come down, the operator moved the lever by pressing upon it with his foot; that the machine was not in good repair; that the die came down

---
*Head-note by GRANT, J.

without the plaintiff pressing upon the lever; the duty of defendant to provide suitable means, appliances, implements, utilities, and machinery to enable plaintiff to do his work safely, and to provide proper "safeguards in the connection of the control and protection of the tools," etc., so that this press would not go into operation when the plaintiff did not step upon the lever; and the duty to furnish reasonably safe appliances, and to use ordinary care to see that said press was at all times in reasonable and safe repair and suitable for the purpose. The negligence charged was the failure to provide these appliances and safeguards, and knowingly permitting said press to be and remain out of repair. It is alleged that the die came down while plaintiff was placing a piece of tin underneath, and struck two of his fingers; that plaintiff had not pressed upon the lever; and that it came down for some reason, which plaintiff generally charges to a want of repair, but does not specify any part or particular in which the machine was out of repair.

It is not easy to describe this machine and its operation. Defendant's foreman, when asked to explain its operation, replied that it was a hard question. The jury evidently had some difficulty in thoroughly understanding it; for, after they had retired and considered the case for some time, they returned into court, and asked permission to see the machine, but were informed by the court that their request could not be granted. The superintendent of the factory thus described it:

"*Q.* Will you tell the court and jury on what principle —just how—these machines work, so that they can see whether they are safe or not, and how they can be started, and why they are not dangerous if properly handled?

"*A.* Well, the machine, of course, is constructed of a large casting of iron. There is a shaft about two and a half or three feet long passes from the top, and on that shaft there is a cross-head placed, with a slide coming down. On the end of the shaft there is a wheel. It is a loose wheel,—not a tight wheel. Inside of that wheel there is a collar. That collar has a recess cut into it, with

a piece of steel set into it, so that it will stand the wear and tear. In the wheel there is a clutch pin. There is a spring in behind that clutch pin, and also a little projection extending from the pin as a guy for a dog to catch it. There is a switch rod comes up in under that leads down to the bottom of the press, to the treadle. When the operator steps on that treadle he releases that clutch pin, this switch rod presses down and catches the little pin and releases the clutch pin, the clutch pin comes out and falls into this recess, and it is carried around by the steel. There is a little steel block set in there, and the clutch pin is not released until the machine is to its highest point. Then the clutch pin is released, and it is released at the same point that it enters on, and the machine will stay there then until the treadle is depressed again. That is pretty near as good as I can explain the thing.

"*Q.* Suppose the treadle should break, so that it wouldn't operate the clutch pin at all; what would be the effect on the machine, — on the stamping part of the machine,—as to its moving around?

"*A.* There wouldn't be any effect whatever. The press wouldn't come in operation.

"*Q.* It would just simply stand still?

"*A.* Yes, sir.

"*Q.* There is a brake on this?

"*A.* Yes, sir. The purpose of the brake is simply to steady the sliding motion of the press. It has nothing whatever to do with the starting or stopping of the machine. If this brake was not on, the weight of this machine may probably fall to the other side of the recess; yet it would stand at a certain point, and the clutch pin would come to it and take it up again. When she is going up, it could not fall,—the press could not fall. Under no consideration can this press fall or come down without the power. The brake sometimes gets loose, and needs tightening, because the boys make a little mistake, and get a little too much oil on the press, and get a little in the brake, and it makes it a little slippery. The condition of the brake does not add anything to the danger of operating the machine. At the time plaintiff was hurt I looked over the machine myself. It was in good condition, just the same as it is today. That machine has been used every day that we have got any work for it, and we have work for it pretty near every day. There have been no repairs at all put on it since that day. Its condition

today, as to being in good working order and good repair, is just as good as the day we got it. There is nothing about the machine, or the method of operating it, that would cause it to wear out rapidly, with the exception of what you call the clutch pin; and, when the clutch pin becomes worn, the press won't work or operate at all. If there should be a defect in the clutch pin, that would not add at all to the danger of operating it. The machine makes about 75 revolutions a minute, and weighs about 1,800 pounds. The machine stands on a hard floor, with a cement floor under it. The cement floor is about six inches thick, if I remember right."

· Plaintiff introduced two witnesses, himself and one Lavesque, to prove the alleged negligence. Plaintiff testified that there were nine presses in the room; that he had operated the press by which he was injured between one and two weeks, when he first entered the defendant's employ; that on one occasion the die came down before he stepped upon the lever; that he called the attention of one Yank, the foreman in the room, to it, who then took the wheel off, tightened a couple of bolts on it, and put it on again, after which it worked all right; that he was then put to work upon another press; that after about two weeks he was again placed at work upon this machine, and it operated satisfactorily for about an hour, when he was injured; and that he did not know what the matter was with it. On cross-examination he testified that, at the time he first called the attention of the foreman to the machine, it did not always stop when he took his foot off; that "it went up and down once or twice after I took my foot off, before it stopped." Lavesque testified that he operated the machine a day or two before the plaintiff got hurt; that it came down and stayed down; that he told the foreman, who tightened up a couple of bolts, and it worked all right. This was the only time he knew of any difficulty with the machine, and with that single exception it started and stopped in obedience to the lever. This witness did not know what was the matter with the machine, or "whether it was in order or out of order."

The above is all the testimony bearing upon the condition of the machine. When plaintiff rested, defendant moved for a verdict in its favor. The motion was denied, and defendant then introduced testimony. Mr. Yank testified that he occasionally tightened the screws when the brake became loose; that the only effect of the brake being loose would be to make it a little noisier than usual; that with this exception there never was anything the matter with the machine; that nothing was done to the machine after the accident; that it was operated continuously from that time to the time of the trial, and was never repaired. The testimony of the superintendent, as to the working of the machine, is given above. This witness further testified: "If the clutch was out of repair, the machine simply failed to operate at all." Other witnesses who operated it testified that it worked satisfactorily from the time of the injury down to the time of the trial, without any repairs, or anything being done to it; that it was then, and had since continued, in good condition and in use.

The court left it to the jury to determine whether the machine was defective, and in what manner it was defective, saying to them that:

"It is essential that the plaintiff should allege and prove the manner in which this machine was defective, * * * and the defendant must be guilty of such negligence, in examining or looking after the machine, to detect the difficulty with it, if there was one, which made it unsafe or dangerous for the plaintiff to use it."

*Moore & Moore,* for appellant.

*Lehmann Bros.* and *F. J. Riggs,* for appellee.

GRANT, J. (*after stating the facts*). No fault is found with the character or structure of the machine. These machines are in use and have been for many years, both in this country and in others. No claim is made that the defendant did not perform its full duty towards

its employés in providing a proper and safe machine. It
had been in operation several years, and had always
worked satisfactorily, except in the two instances referred
to in the testimony of plaintiff and Lavesque. No defect
or broken or worn machinery is pointed out. No failure
to inspect is shown. The sole claim of the plaintiff is
that for some reason the machine failed to work properly
on the occasion of the accident, and on two other occa-
sions, and therefore there was evidence for the jury to
find that there was some negligent act on the part of the
defendant which caused the accident. But what was
such act? Neither plaintiff nor his counsel inform us.
The court in his charge did not inform the jury of the
specific acts of negligence claimed. There is no evidence
to point out any such act. He who alleges negligence
must prove it. He must prove either facts or circum-
stances from which the jury can point to the specific act
of negligence which caused the injury. There are two
reasonable theories upon which to account for this acci-
dent: (1) That plaintiff, a boy 16 years old, uncon-
sciously or carelessly pressed the lever with his foot when
he should not; and (2) that the machine was running
properly and safely, but that he failed to remove his hand
in time to avoid his fingers being struck by the die. If
neither of these be true, then the cause of the accident
rests in mere speculation.

"When a servant demands from his master compensa-
tion for an injury received in his service, it is necessary
that he trace some distinct fault to the master himself.
The mere fact of such injury is no evidence of such fault."
The mere breaking of a piece of timber, in consequence of
which one fell, was not evidence of negligence. *Quincy
Mining Co.* v. *Kitts,* 42 Mich. 34 (3 N. W. 240). The
failure of a machine to stop by a release of the lever
through which its movement is controlled is not evidence
of negligence, where it worked satisfactorily before.
*Redmond* v. *Lumber Co.,* 96 Mich. 545 (55 N. W. 1004).

126 MICH.—33.

The sudden giving way of an elevator is not evidence of negligence. *Robinson* v. *Charles Wright & Co.*, 94 Mich. 283 (53 N. W. 938). The sudden and unusual parting of a Miller coupler, by which a train was cut in two, will not sustain a finding of negligence. *Tuttle* v. *Railroad Co.*, 48 Iowa, 236.

This case is not distinguishable from the above, and is ruled by them. The court should have directed a verdict for the defendant.

Judgment reversed, and new trial ordered.

HOOKER, MOORE, and LONG, JJ., concurred with GRANT, J.

MONTGOMERY, C. J. (*dissenting*). I am not satisfied that the record is wholly devoid of evidence tending to show negligence on the part of the defendant. I do not understand the rule which requires the plaintiff to affirmatively show negligence to go further than this: That it must be shown that the machinery of defendant was in a condition likely to produce injury to an employé before an employer can be made liable.

The present case is distinguished from *Redmond* v. *Lumber Co.*, 96 Mich. 545 (55 N. W. 1004). In that case it was said:

"If there were anything to show that the machine had been out of order, and that its working was spasmodic or uncertain, there might be room for the contention that defendant was negligent in not keeping it in repair."

There is some evidence of that character in the present record. I recognize that it is slight, but it is enough, in my judgment, to carry the case to the jury.