<table>
<tr><td>138</td><td>129</td></tr>
<tr><td>141</td><td>68</td></tr>
<tr><td>138</td><td>129</td></tr>
<tr><td>s146</td><td>8</td></tr>
</table>

SMITH *v.* HOCKENBERRY.

1. HUSBAND AND WIFE—CRIMINAL CONVERSATION—CONNIVANCE—EVIDENCE.

    Evidence that plaintiff's wife had been criminally intimate with other men before she met defendant, does not warrant an inference that plaintiff connived at defendant's acts where no knowledge on his part of such prior misconduct is shown.

2. SAME.

    That a witness relied upon to show an adulterous act was plaintiff's guest at the time he discovered defendant and plaintiff's wife in a compromising situation, does not warrant the inference that plaintiff knew and consented to the improper relation.

3. SAME—CONDONATION.

    The fact that when plaintiff was informed of the improper relation between his wife and defendant "he did not make much of a reply," and continued to live with her, was not evidence that he consented to such relation.   By continuing

    138 MICH.—9.

to live with her after knowledge of her infidelity, plaintiff condoned her offense, but not the offense of her paramour.

4. SAME—CONSPIRACY.

    Testimony of witnesses that plaintiff's wife had stated that plaintiff "knew of her criminal relations with other men, and did not object; that she had a network around defendant; and that she had taken good care, and had good witnesses," were admissible only on the ground that plaintiff and his wife were co-conspirators, and not as evidence that a conspiracy existed, or of plaintiff's connivance.

5. SAME—DAMAGES—EVIDENCE.

    Defendant, on the question of damages, may show the prior, but not the subsequent, unchastity of plaintiff's wife.

Error to Eaton; Smith, J. Submitted October 6, 1904. (Docket No. 14.) Decided November 9, 1904.

Case by Howard Smith against Clinton Hockenberry for criminal conversation. There was judgment for defendant, and plaintiff brings error. Reversed.

*Q. A. Smith* and *O. J. Hood* (*George Huggett*, of counsel), for appellant.

*Lyman H. McCall* and *Frank A Dean*, for appellee.

CARPENTER, J. This is an action for criminal conversation. Plaintiff's testimony tended to prove that his family consisted of himself, wife, and two children; that while they were living in Potterville, Eaton county, defendant induced them to remove to his house in Charlotte, under an arrangement by which he was to room and board with the family. There was positive and direct testimony tending to prove that while this relation existed defendant debauched plaintiff's wife. This testimony was not contradicted. The jury, however, rendered a verdict for the defendant, finding, as we must assume, and as the charge of the court permitted them to do, that plaintiff connived at his wife's criminal intimacy with defendant. The most important question presented on this record is whether there was any evidence which justified this finding. There was no testi-

mony directly proving plaintiff's connivance, but defendant claims that there was testimony from which such connivance might legitimately be inferred. We will proceed to state and discuss that testimony.

(a) There was testimony tending to prove that plaintiff's wife had been criminally intimate with several other men before she met defendant. It is urged that this testimony warranted an inference of plaintiff's connivance, because he, "knowing of his wife's habits as to consorting with other men, took no steps to prevent it." It is obvious that this argument, if otherwise sound, is based upon the assumption that plaintiff knew that his wife had consorted with other men. If this assumption is not well founded, the argument must be rejected. There is no evidence that plaintiff had such knowledge. No circumstances of his wife's prior misconduct is ever shown to have come under his observation; no rumor of her want of chastity is ever shown to have reached him. It cannot, therefore, be assumed that he had such knowledge, unless he is chargeable with constructive notice of his wife's misconduct. He is not chargeable with such notice unless he owes to the man who wantonly destroys his domestic happiness an obligation of diligence. It is scarcely necessary to say that no such obligation exists.

(b) One of plaintiff's witnesses, who testifies to improper relations existing between plaintiff's wife and defendant, was at that time, on plaintiff's invitation, a guest in his house. The witness had arisen early in the morning, but after plaintiff had gone to work, and in moving about the house discovered plaintiff's wife and defendant in a compromising relation. We cannot assent to defendant's contention that, because plaintiff invited the witness to be a guest in his house, it may be inferred that he knew and consented to the improper relations existing between his wife and defendant.

(c) There was evidence that when plaintiff was informed of the improper relations existing between his wife and defendant "he did not make very much of a reply," and

he continued thereafter to live with his wife. Plaintiff, when told of his wife's infidelity, was not called upon to assert that he did not consent to the same. His silence, therefore, was no admission of such consent. By continuing to live with his wife plaintiff condoned her offense, but he did not condone the offense of her paramour. See *Sanborn* v. *Neilson*, 4 N. H. 501; *Sikes* v. *Tippins*, 85 Ga. 231.

In *Stumm* v. *Hummel*, 39 Iowa, 478, it was held that the trial court did not err in refusing to charge the jury that, "if plaintiff, after full knowledge of his wife's infidelity, continued to live with her upon the same terms as before her crime, this would be evidence to show that plaintiff connived at it;" and in charging that "plaintiff's forgiveness of his wife and continuance of the marital relation did not necessarily have the effect to establish connivance or assent." It cannot be claimed that this is an authority for the proposition that connivance cannot be inferred because the husband continues marital relations with his wife after knowledge of her infidelity. I think, however, that the language of the court in disposing of the question indicates that such inference cannot be drawn. That language was as follows:

" The law will not hold a party remediless for an injury of this kind because through the exercise of Christian virtue, the influence of family interest, or even in the want of what may be regarded as true manly spirit, he forgives an erring wife, and trusts in her reformation and promise of future good conduct and virtue."

The question of whether connivance may be inferred from condonation by the husband of his wife's infidelity must be disposed of, then, not by authority, but on principle. If the husband did actually connive at his wife's intimacy with defendant, it might justly be inferred that he would continue his marital relations with her. But we encounter an altogether different question when we are asked to infer such connivance from a continuance of the marital relations. The husband may have continued the

marital relations from one of several possible reasons.   He may have continued them because he connived at his wife's improper conduct, because that course was best for the interests of his children, because he lacked spirit to resent his humiliation, or because he was moved by love for his erring wife or by pity for her condition.   There is nothing in this case which enables us to say whether any one of these, or some other possible reason, determined plaintiff's action. We depart from the law of sound reason and legal evidence and enter the field of pure speculation if, under such circumstances, we attempt to infer the particular reason which moved plaintiff to condone his wife's offense.   Those decisions which deny the right of a jury to attribute to a particular cause an injury which may as well be attributable to another (see *Muddle* v. *Stride*, 9 C. & P. 380; *Gilbart* v. *Dale*, 5 Ad. & El. 543; *Midland Railway* v. *Bromley*, 17 C. B. 372; *Marquette R. Co.* v. *Kirkwood*, 45 Mich. 56) are in point, and sustain this conclusion.

(*d*) Witnesses were permitted to testify that plaintiff's wife had stated, though not in his presence, "that her husband knew of her criminal relations with other men, and did not object; that she had a network around defendant; and that she had taken good care, and had good witnesses."   These declarations were admissible only upon the ground that plaintiff and his wife were co-conspirators, but they furnished no evidence that the conspiracy existed (see *Solomon* v. *Kirkwood*, 55 Mich. 256; *Mawich* v. *Elsey*, 47 Mich. 10), and therefore they cannot be considered as furnishing any evidence of plaintiff's connivance.

Other items of testimony less significant than these are relied upon by defendant.   The above reasoning would compel us to say of them, as of these, that they do not justify the inference that plaintiff connived at his wife's infidelity, and that the court therefore erred in his charge and in his refusal to charge.

As there was no evidence of a conspiracy, the court also erred in receiving in evidence the declarations of the wife

that her husband knew of her criminal relations with other men, and that she had a network around defendant.

The trial court permitted defendant to prove that plaintiff's wife was guilty of criminal intimacy with other men, both before and after her intimacy with defendant. The testimony relative to such intimacy before plaintiff's cause of action accrued was properly admitted. The proof that his wife lacked chastity before defendant met her clearly lessened plaintiff's damages. See *Ellsam* v. *Faucett*, 2 Esp. 562; *Rea* v. *Tucker*, 51 Ill. 110; *Torre* v. *Summers*, 2 Nott. & McC. (S. C.) 267. The testimony relative to the intimacy after the cause of action accrued should, however, have been excluded. See *Ellsam* v. *Faucett*, supra; *Rea* v. *Tucker*, supra; *Torre* v. *Summers*, supra. The ground upon which this testimony is excluded is not stated in these decisions, but I assume that it rests in part at least upon the assumption that defendant's wrong may have contributed to the subsequent misconduct of plaintiff's wife, and that to admit such testimony might enable him to use a circumstance to mitigate damages which actually enhances them. I do not think that any other question presented by the record demands discussion.

Judgment reversed, and a new trial ordered.

MOORE, C. J., and MONTGOMERY and HOOKER, JJ., concurred. GRANT, J., did not sit.