SIEGEL v. DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

1. MASTER AND SERVANT—NEGLIGENCE—DUTY TO INSPECT INSTRUMENTALITIES—RAILROADS.

Under uncontradicted evidence that torpedoes placed on a railroad track failed to explode, resulting in a collision in which plaintiff's intestate was killed, that the torpedoes were purchased of a reputable manufacturer, and properly stored, and that the usual mode of inspection was by use, and a visual inspection would not necessarily have disclosed any defects which were conjectural only from the failure to explode, an occurrence of the kind not having previously happened to defendant, no duty to inspect can be inferred.

2. SAME—SAFE APPLIANCES.

The duty of a master to furnish safe appliances, imposes only reasonable care in the selection of the article and in its required inspection, and does not amount to insurance of its safety.

3. SAME—PRESUMPTION FROM ACCIDENT.

The mere fact that such accident occurred, resulting in injury to an employé, raises no presumption of negligence on the part of the master.[1]

_____

[1] As to injury to railroad employé by torpedoes on the track, see note to *Mize* v. *Railroad Co.* (Ky.), 16 L. R. A. (N. S.) 1084.

Error to Shiawassee; Miner, J.   Submitted February 16, 1910.   (Docket No. 4.)   Decided March 5, 1910.

Case by Margaret Siegel, administratrix of the estate of Clark Hughes, deceased, against the Detroit, Grand Haven & Milwaukee Railway Company for the negligent killing of plaintiff's intestate.   A judgment for plaintiff is reviewed by defendant on writ of error.   Reversed.

*Harrison Geer* (*W. K. Williams*, of counsel), for appellant.

*Odell Chapman*, for appellee.

Plaintiff's decedent was a brakeman employed by defendant.   He was a member of the crew of extra freight train No. 1089, running from Durand to Detroit, acting as forward brakeman.   The train left Durand about 10 o'clock p. m., and proceeded towards Detroit, doing local freight work.   At 5:15 a. m. it had reached Drayton Plains, where it stopped to pick up some cars of ice.   At that time regular freight train No. 66, likewise running from Durand to Detroit, was due at Drayton Plains.   As soon as the extra freight stopped, Conductor Snover sent the rear brakeman, Taylor, back to protect the rear of the train.   Taylor went back about three-quarters of a mile, taking with him signal flag and torpedoes.   He remained there for 15 or 20 minutes for the purpose of flagging No. 66 upon its approach.   At the expiration of that time, No. 66 had not arrived, and his own train signaled him by a whistle to come in.   He thereupon placed two torpedoes upon the track about a rail length apart, and ran back to his train.   At the time he reached it, it was already in motion.   He climbed upon the rear platform, where Conductor Snover was, and held some conversation with Snover.   The morning was extremely foggy, and objects could not be discerned at any considerable distance. After the train had gone about a half a mile and had acquired speed of 10 or 12 miles an hour, Snover and Tay-

lor from their position on the back platform heard No. 66 approaching from the rear. Plaintiff's decedent, Hughes, was at that time sitting at the desk in the caboose. Snover warned him of the danger, and jumped. The engine of No. 66 crashed into the caboose before Hughes could get out, and he was instantly killed.

Immediately after the accident, Taylor and Snover (who were witnesses for plaintiff) went back upon the track to the point where Taylor had fixed the torpedoes, and found them there, flattened out by the passage of No. 66, but in their opinion not exploded. Taylor testified that he had taken the torpedoes from the usual receptacle in the caboose, and that he had used other torpedoes from the same receptacle during the night at Gaines, where they had properly exploded. The negligence counted upon by the plaintiff is that the defendant furnished plaintiff's decedent with worthless torpedoes, which would not explode, and so give warning to the approaching train, and, further, that the defendant had negligently failed to properly inspect the torpedoes so furnished.

Defendant proved that it purchased its torpedoes in lots of 10 to 25 gross monthly from the Railway Signal Company; that they were kept in a dry room at Battle Creek; that from there each month a supply was sent to Durand, where they were kept in a box on the wall, and in the dry. No complaints had ever been received by the storekeeper, at either Battle Creek or Durand, that the torpedoes failed to explode. The president of the company which manufactured the torpedoes testified that at the time of the accident his company furnished 90 per cent. of the torpedoes used by the railroads of the United States, Canada, and Mexico, and that he had never heard of one of them failing to explode; that no inspection of the torpedoes is necessary; that they can only be inspected by use, in which event they are consumed.

At the close of the testimony, defendant's counsel moved for the direction of a verdict upon the grounds:

(1) That no negligence on the part of the defendant had been proven.

(2) That the defendant, having purchased the torpedoes from a reputable manufacturer, ready for use, was under no obligation to inspect them.

(3) That there was no way by which a person of ordinary knowledge could tell by inspection whether or not the torpedo would explode.

Other grounds for a directed verdict were urged by defendant, which need not be considered here. Defendant's motion was overruled, and the court upon the point in question charged the jury as follows:

"It is for you to determine whether under all of the circumstances and evidence in the case whether the defendant used ordinary care and skill to discover the defects in these torpedoes, if there were any. If it did use ordinary care and skill to discover the defects, and it did not discover them, notwithstanding there were defects, plaintiff could not recover. For instance, if he used the ordinary care and skill such as an ordinary person would have done under like circumstances, and he did not discover the defects, then, gentlemen, plaintiff could not recover. Or if the defects were such, whether he investigated it or not, if they were such that a person using ordinary care and skill would not have discovered the defects in the torpedoes, then plaintiff cannot recover. Or, in other words, the defendant was obliged to use the same ordinary care and skill that any other person under like circumstances would have used, no more or no less. He is not required to use the greatest skill or the greatest care, but ordinary care—ordinary skill—and, if he used that and did not discover any defects, then plaintiff cannot recover, or, if you find there were no defects that could have been discovered by ordinary care and skill, then plaintiff cannot recover. It is only when there were defects such as could have been discovered after they came into the possession of the defendant and had remained in its possession a sufficient time, so that a person of ordinary skill and prudence by examining them would have discovered it, it is only in such a case that the defendant can be claimed to have been negligent."

A judgment having resulted in favor of plaintiff, defendant brings the case here by writ of error.

BROOKE, J. (*after stating the facts*).   The sole question for our determination in this case is whether or not the defendant owed to plaintiff's decedent the duty of inspection.   The record shows that the torpedoes failed to explode.   It is absolutely silent as to the cause of that failure.   The president of the company which manufactured them testified:

"We purchase the tin from which the shells of the torpedoes are made from the American Tin Company, which practically controls the market.   We buy the best tin we can.   It is possible that there might be some little defect in the tin that could not be discovered by the eye. * * * I am only giving a possibility, the only way I could conceive of a thing happening.   I have never known of a case where this did happen, but it is about the only way that I know of that could happen to bring about this result.   * * *   Manufactured tin is not always perfect. There are at times little flaws in it, and the coating wearing off the top may leave a small hole in the case which is almost impossible to detect.   Moisture or oil may soak through and destroy the contents.   * * *   We japan all our goods ourselves.   I have known of millions of torpedoes, manufactured by our company, and they have always exploded properly.   To my knowledge, they have never failed.   I think our composition and manufacture of them is as perfect as human agency can produce.  * * * We have furnished torpedoes to defendant for 10 or 15 years prior to 1905.   Our long experience has brought about every possible safeguard in the manufacture of these goods.   Every torpedo is made by hand, and filled by hand.   They go through a process, and it is almost impossible to have any defects in a torpedo.   * * *   It would be dangerous for one unfamiliar with their manufacture to inspect a torpedo by trying to separate it.   The ordinary way of inspection is to put them on the road and try them out.   It is not safe to strike one with a hammer, or anything of the kind.   That has been done in some cases with disastrous results.   They are prepared and sold by us, for immediate use, to the various railroads, and there is nothing for the railroad company to do after we have prepared them, except to take care of them and use them.   * * *   A chemical change will not take place through age which will prevent them exploding."

The uncontradicted testimony showed that, after coming into possession of defendant, the torpedoes were properly stored in a dry place. We have then an article of commerce, dangerous in its character, in general use upon all of the railroads of the country, made by a reputable manufacturer, sold to the defendant *ready for use*, the ordinary mode of inspection of which, in the hands of the consumer, is by use and consumption.

Under these circumstances, we are asked to say that it was proper to permit the jury to determine " whether the defendant used ordinary care and skill to discover the defects in these torpedoes, if there were any." We are unable to agree with this contention. Even assuming that the torpedoes in question were properly placed, as testified to by Taylor, and that they failed to explode, there is still no evidence in the record tending to show the cause of such failure. The jury might surmise that the tin casing had become rusted, or was originally defective, and, further that an inspection by the eye might possibly have discovered such defect. No evidence of either fact was offered, and the conclusion of the jury to that effect would be based upon conjecture only. Touching the necessity for inspection by defendant, if inspection in the ordinary acceptation of that term were possible, we find that defendant had no knowledge or notice of any defects in the torpedoes or any information, which would impose upon it a duty of inspection, never before undertaken. Its experience, covering a period of 10 or 15 years, in the use of these appliances, was such as to indicate that, when properly placed, they invariably exploded. The experience of the manufacturer but adds weight to that of the defendant. The mere fact that there is a *bare possibility* that the casing of one torpedo out of many thousands may be constructed of defective tin, thus permitting the tin to rust through and admit water and oil, if brought in contact therewith, is not sufficient to warrant a finding that the defendant was negligent in failing to so inspect as to discover the fault. *Siegel* v. *Heating Co.*, 143 Mich.

484 (106 N. W. 1127); *Clement* v. *Rommeck*, 149 Mich. 595 (113 N. W. 286, 13 L. R. A. [N. S.] 382, 119 Am. St. Rep. 695). A valuable discussion of the principle here involved will be found in *Shea* v. *Wellington*, 163 Mass. 364 (40 N. E. 173).

Defendant owed to plaintiff's decedent the duty of furnishing safe appliances. This duty does not amount to an insurance to the employé that the appliances so furnished shall be *absolutely perfect*. Having used reasonable care in the selection of the article, and such vigilance in its inspection as is consistent with the character of the article, and with good railroading, the defendant has discharged that duty, and a jury may not be permitted to speculate in such case. *Fuller* v. *Railroad Co.*, 141 Mich. 66 (104 N. W. 414); *Marquette, etc., R. Co.* v. *Kirkwood*, 45 Mich. 51 (7 N. W. 209, 40 Am. Rep. 453); *Smith* v. *Hockenberry*, 138 Mich. 129 (101 N. W. 207). The mere fact that an accident has occurred resulting in the injury of an employé raises no presumption of negligence on the part of the master. *Toomey* v. *Steel Works*, 89 Mich. 249 (50 N. W. 850); *Quincy Mining Co.* v. *Kitts*, 42 Mich. 34 (3 N. W. 240); *Robinson* v. *Wright & Co.*, 94 Mich. 283 (53 N. W. 938).

The judgment is reversed, and a new trial ordered.

HOOKER, MOORE, MCALVAY, and STONE, JJ., concurred.