## HUGHES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11502.

Circuit Court of Appeals, Fifth Circuit.

Feb. 21, 1946.

Harry Baum and Helen R. Carloss, Sp. Assts. to Atty. Gen., and Sewall Key, Acting Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue and J. M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

On April 1, 1940, the petitioner, J. W. Hughes, transferred to his wife 82½ shares of stock in Southeastern Stages, Inc., and in December following a dividend was declared and paid in the company's notes which were themselves paid the following year. This dividend was not included by Hughes in his income tax return for 1940. The Commissioner included it, the only explanation of the adjustment being: "It is held that dividends of $6,250 on 82½ shares of stock of the Southeastern Stages, Inc., are taxable to you rather than to your wife. Section 22(a) of the Internal Revenue Code."

On petition for redetermination the Tax Court, acting by one judge, leaned heavily on the presumption of the correctness of the Commissioner's action, and reasoned away the uncontradicted testimony to the contrary by assuming that there might have been a sale or a gift by Mrs. Hughes to her husband in the initial issuance of this stock in his name instead of hers, rather than a mistake as everyone testifies, which was corrected by the transfer made to her in 1940. The final conclusion that the burden of overturning the action of the Commissioner was not sustained we think is not according to law.

The stock stood in Mrs. Hughes' name when the dividend was declared, and for nine months before. The Commissioner gives no reason why the dividend was not hers save to refer to Int.Rev.Code 22(a), 26 U.S.C.A. Int.Rev.Code, § 22(a). That Section includes in taxable income "dividends." Dividends are of course taxable. The Section, like the Constitutional Amendment permitting the taxation (without apportionment) of "incomes, from whatever source derived," does not say who is to pay the tax. The taxpayer is of course the person who owns the income, and in the case of income arising from the ownership of property, the person who owns the property.

Allen Post and R. Emerson Gardner, both of Atlanta, Ga., for petitioner.

Here the mere production of the stock certificate indicates Mrs. Hughes to be the owner, and if no more were shown it would prove the Commissioner was wrong. The transfer from Hughes to her is not attacked by pleading or evidence as being fictitious and unreal and not intended to interfere with the transferror's previous ownership, as in Sewall v. Commissioner, 5 Cir., 151 F.2d 765, and Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. The evidence is that Mrs. Hughes has since dealt with the stock as her own, giving some to her children, selling other and putting the money in her bank account and buying other stock in her own name. The question of a pretended transfer is not in the case.

What Hughes alleged in his petition to the Tax Court and what the Commissioner contented himself with denying, was that Mrs. Hughes in 1930 owned 99 shares in White Star Stage lines and Hughes owned one share; in December, 1933, this company was by written contract merged into Southeastern Stages, Inc., one-sixth of whose stock was to be issued to Hughes and Mrs. J. W. Hughes, towit 83⅓ shares; that by error the stock certificate was issued for the 83⅓ shares to Hughes alone, but that only about one share was really his property, the remainder being hers. This was the issue before the Tax Court. The evidence is uncontradicted that Hughes in 1930 was a bus driver and his wife worked in a bank. She had saved in her own bank account $2,200, and agreed with her husband to use it in buying a bus and establishing a business of their own. A lawyer advised a corporation, the stock to be issued to Mrs. Hughes to protect her investment, which was done. She turned over to Hughes $2,150 which was used to obtain a franchise and a permit to operate, and to organize the corporation, and to buy a bus. Fifty dollars was used to move to Augusta, Ga. Hughes had saved no money and contributed none. The company was not very successful, and in 1933 apparently owned only its bus and franchise. The merger with Southeastern Stages, Inc., was discussed between Hughes and Mrs. Hughes and agreed to by her. The contract of merger was in writing, the copy produced being signed by Hughes for himself and for Mrs. Hughes. Mrs. Hughes herself indorsed her certificate of 99 shares in the old company, but did not attend the meeting of the new. The attorney for Southeastern Stages, Inc., who was not representing Hughes and his wife personally, testifies that he prepared the contract of merger in his office, that he attended the corporate meeting which carried it out and prepared the minutes thereof; that he understood that Mr. and Mrs. Hughes were to have the new stock in proportion to their holdings of the old and the contract mentioned them both; but the minutes, by a mistake and oversight of himself or his stenographer omitted mention of Mrs. Hughes and directed the new stock, 83½ shares to be issued to Hughes, which was done. Medlock, who became secretary of the company a few months later and had custody of the above mentioned records, testifies that he knew that, aside from the one share which Hughes gave him to qualify him, the 82½ shares in Hughes' name really belonged to his wife. These are disinterested witnesses. Hughes testifies positively that at no time did his wife ever give him her shares of stock in either company. She testifies that she let her husband look after her business, but did not give him the stock.

Against this is the fact that she did not attend stockholders meetings and gave her husband no proxy. He, however, had bought 166⅔ other shares, and her stock was not necessary to a quorum. Since her stock stood in his name, a proxy was not in order from the company's standpoint. Hughes also twice listed this 82½ shares in a bank statement to obtain loans. This might have caused Mrs. Hughes to lose her stock to creditors, but as it is not shown to have been known to her it could be no evidence of a gift to her husband. And lastly, he collected the dividends, or rather Medlock deposited them to his credit in bank, while the stock stood in his name. But when the mistake about the stock being in his name was rectified by the transfer to her, the undisputed testimony is that Hughes accounted for these dividends also in a settlement with her.

■ Now these people were living under the laws of Georgia, and their property rights as between themselves are regulated thereby. Though in Georgia a married woman is a feme sole as to her separate property, by Georgia Code § 53-504, no sale of it to her husband is valid unless allowed by order of the Superior Court. No one here testifies to any sale of any of her stock to her husband, and no order of court appears. Again Georgia Code, § 53-506

provides: "A wife may give property to her husband, but a gift will not be presumed. The evidence to support it must be clear and unequivocal, and the intention of the parties free from doubt." We do not think the judge of the Tax Court was free to conclude that Mrs. Hughes at some time must have sold or given her stock to her husband. The evidence and the law are such that she could at any time in a court of equity have compelled its transfer to her, so that the voluntary transfer in April, 1940, was not unreal or invalid, but perfectly valid.

The vague ruling of the Commissioner, which he did not amplify or define in any manner by his pleading in the Tax Court, is amply shown to be incorrect. The presumption in its favor cannot lawfully be given prevalence over the sworn testimony and the local law touching ownership.

The judgment of the Tax Court is reversed with direction to redetermine the tax after eliminating the dividend in controversy.

Reversed.