James D. **BALLOU** and Sarah L. Ballou, Plaintiffs-Appellants,

v.

**UNITED STATES** of America, Defendant-Appellee.

No. 16309.

United States Court of Appeals Sixth Circuit.

Dec. 22, 1966.

Alan R. Vogeler, Cincinnati, Ohio, for appellants. Kyte, Conlan, Wulsin & Vogeler, Cincinnati, Ohio, of counsel.

I. Henry Kutz, Dept. of Justice, Washington, D. C., (Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks, Alec A. Pandaleon, Attys., Dept. of Justice, Washington, D. C., on the brief); E. Winther McCroom, Asst. U. S. Atty., Cincinnati, Ohio, of counsel, for appellee.

Before PHILLIPS, Circuit Judge, McALLISTER, Senior Circuit Judge, and BROOKS, District Judge *.

HARRY PHILLIPS, Circuit Judge.

This is an income tax case, involving the bona fides of a family partnership operated under the name "Ballou Services" and engaged in the business of providing office services to the public.

The taxpayers, a husband and wife, attempted to create a new partnership to carry on their office service business, which they had conducted previously as equal partners. The new partnership was to consist of the taxpayers individually, and the husband as trustee of separate trusts for each of their three minor children, whose ages were seven years, five years and eight months respectively.

In pursuance of this plan, the taxpayers executed instruments conveying to the husband as trustee for each child a capital interest of fifteen per cent in the partnership. A formal partnership agreement thereupon was executed by the husband and wife and the husband in his capacity as trustee for the three minor children.

The Internal Revenue Service refused to recognize the trusts as valid partners and taxed the income of the partnership to the husband and wife for the years 1956, 1957 and 1958. The taxpayers paid the difference plus interest totaling $32,217.05, and filed suit for refund, demanding a jury trial.

The jury returned a general verdict in favor of the United States and also answered in the negative the following interrogatory submitted by the district judge:

"Have the plaintiffs proven by a preponderance of the evidence that each of the three trusts which they created for their children genuinely owned a fifteen per cent capital interest in Ballou Services?"

* Honorable Henry L. Brooks, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation.

The motion of the taxpayers for a new trial was overruled and this appeal followed.

The issue on appeal is whether there is evidence to support the verdict of the jury. The facts are set forth more fully in the comprehensive dissenting opinion of Judge McAllister, to which reference is made.

The present statutory provisions relating to family partnerships originated with the Revenue Act of 1951, effective for taxable years beginning after December 31, 1950, and were codified without substantial change in Section 704(e) of the Internal Revenue Code of 1954.[1]

The reports of the House and Senate Committees [2] contain the following comments:

"The amendment leaves the Commissioner and the courts free to inquire in any case whether the donee or purchaser actually owns the interest in the partnership which the transferor purports to have given or sold him. Cases will arise where the gift or sale is a mere sham. Other cases will arise where the transferor retains so many of the incidents of ownership that he will continue to be recognized as a substantial owner of the interest which he purports to have given away, as was held by the Supreme Court in an analogous trust situation involved in the case of Helvering v. Clifford (309 U.S. 331). The same standards apply in determining the bona fides of alleged family partnerships as in determining the bona fides of other transactions between family members. Transactions between persons in a close family group, whether or not involving partnership interest, afford much opportunity for deception and should be subject to close scrutiny. All the facts and circumstances at the time of the purported gift and during the periods preceding and following it may be taken into consideration in determining the bona fides or lack of bona fides of a purported gift or sale." U. S. Code Congressional and Administrative Service, 82d Cong., 1st Sess. pp. 1814–1815, 2009.

Mertens summarizes as follows the tests to apply to a family partnership such as the one here involved:

"The most difficult problem in the case of partnership capital interests acquired by gift or purchase from a member of the family is the determination of whether the purported transfer vested in the transferee such dominion and control over the interest that he might be considered its true owner. This determination requires a close scrutiny of all the circumstances be-

1. 26 U.S.C. § 704(e):

"(e) Family partnerships.—

"(1) Recognition of interest created by purchase or gift.—A person shall be recognized as a partner for purposes of this subtitle if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person.

"(2) Distributive share of donee includible in gross income.—In the case of any partnership interest created by gift, the distributive share of the donee under the partnership agreement shall be includible in his gross income, except to the extent that such share is determined without allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the portion of such share attributable to donated capital is proportionately greater than the share of the donor attributable to the donor's capital. The distributive share of a partner in the earnings of the partnership shall not be diminished because of absence due to military service.

"(3) Purchase of interest by member of family.—For purposes of this section, an interest purchased by one member of a family from another shall be considered to be created by gift from the seller, and the fair market value of the purchased interest shall be considered to be donated capital. The 'family' of any individual shall include only his spouse, ancestors, and lineal descendants, and any trusts for the primary benefit of such persons."

2. H.Rep.No. 586, p. 33, S.Rep.No. 781, pp. 39–40, 82d Cong. 1st Sess. (1951–2 Cu. Bull. pp. 357, 381, 458, 486).

fore, during and after the purported transfer.

"The bona fides of a donee's ownership of the capital interest attributed to him is not determined exclusively by the fact that legally sufficient documents of transfer have been executed nor by any other mechanical or formal test. * * *

"More important than formal or mechanical tests is the extent to which substantial controls over the purportedly transferred partnership interest are retained by the transferor. Among the 'retained controls' which may be considered significant as an indication of a lack of real ownership in the transferee are the following:

"1. Retention of control of the distribution of amounts of income or restrictions on the distributions of amounts of income to the donee partner. Such restrictions are clearly present when the donee has no voice in the determination of when and in what amounts such distributions are to be made, these decisions resting in the uncontrolled discretion of the donor and other partners. On the other hand, when a donee either receives or has the right to receive upon demand his distributive share of partnership income for his sole benefit and use, without interference from the donor, this evidences the reality of his partnership interest.

"2. Restrictions on the right of the donee to sell or liquidate his interest without financial detriment. Thus, while an agreement by a donee partner not to dispose of the acquired interest to anyone except the donor may not render the partnership invalid, even if the donor has an option to acquire such interest at will, the reservation by the donor of a right to repurchase at book value may lead to a contrary result. Although the donee may be technically free to liquidate his interest, his dependence on the donor and a lack of maturity and understanding of his rights may indicate a lack

of freedom, in fact. This is particularly true in the case of minors.

"3. Retention of control by the donor over the assets essential to the partnership business (as for example, through retention of assets leased to the alleged partnership) and retention by him of management powers beyond those common in ordinary business relationships. Such powers retained by the donor, however, are not necessarily fatal to the existence of a valid partnership where a bona fide transfer of a partnership interest otherwise indicated; partnership affairs are frequently conducted by a managing partner. The participation by the donee, however, in an executive or management capacity in the conduct of the business affairs of the partnership is a good indication of the bona fides of his interest." Mertens, Law of Federal Income Taxation, Vol. 6, § 35.10.

■■ A partnership may consist of members of a family and may be recognized for tax purposes, both under the statute (Footnote 1) and under decisions announced prior to the enactment of the statute. Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Miller v. Commissioner of Internal Revenue, 203 F.2d 350 (C.A. 6); Miller v. Commissioner of Internal Revenue, 183 F.2d 246 (C.A. 6); Kent v. Commissioner of Internal Revenue, 170 F.2d 131 (C.A. 6). The bona fides of a family partnership, particularly one involving minor children who contribute no services, is subject to close scrutiny and is a question of fact to be determined under the particular circumstances of each case.

It has been said that this statute (Footnote 1) does "not legitimatize *all* family partnerships." Kuney v. Frank, 308 F.2d 719, 720 (C.A. 9).

Thus, a question of fact is presented as to whether a capital interest in Ballou Services is genuinely owned by the three trusts created by the taxpayers for their minor children. The jury, as trier of the facts, determined this issue against

the taxpayers and in favor of the Government.

■ In family partnership cases, as in other cases, the findings of the trier of the facts will not be disturbed on appeal, if supported by substantial evidence and not clearly erroneous. Dulworth v. United States, 302 F.2d 266 (C.A. 6); Acuff v. Commissioner of Internal Revenue, 296 F.2d 725 (C.A. 6); MacDonald v. Commissioner of Internal Revenue, 165 F.2d 213 (C.A. 6); De Korse v. Commissioner of Internal Revenue, 158 F.2d 801 (C.A. 6).

■ Under the record in the present case, we cannot say that there is no evidence from which the jury, as triers of the facts, could not have reached its verdict against the taxpayers and in favor of the Government. Under the provisions of the partnership agreement and trust instruments, the husband and father retained the same control of the management of the new partnership as he had previously exercised over the old partnership. Neither the minor children nor their father in his capacity as trustee contributed any services to the partnership or participated in the daily operation of the business. Under an express provision of the partnership agreement, the father in his capacity as trustee was prohibited from performing any service for the partnership. The forty-five per cent share of the partnership assets held in trust for the minor children could not be sold or reinvested except with the consent of the father and mother as owners of the remaining fifty-five per cent interest. No single factor discussed either in this opinion or in the dissenting opinion is conclusive in and of itself as to the validity of the partnership for tax purposes, but any or all these factors could be considered by jurors in making their factual determination as to the bona fides of the partnership.

As pointed out by Judge McAllister in his able dissenting opinion, this court has recognized the validity of a family partnership involving minor children in Miller v. Commissioner of Internal Revenue, supra, 203 F.2d 350 and 183 F.2d 246. We held in Miller that the findings of the tax court were not supported by substantial evidence. The Miller case was decided upon its own facts, involving the operation of drug stores by a family partnership. Although there is factual similarity between the Miller case and the present case, a distinguishing factor was the following:

"Prior to the making of the above named trusts, Sam H. Miller and Florence R. Miller, his wife, as copartners, owned equal interests of $60,000 each in a drug store business. During the year 1940, the Millers had lost a prominent location for one of their stores in Butler, Pennsylvania, when a large chain store corporation had acquired the lease. At that time, they felt it was necessary to secure another location in that city, and in making arrangements to purchase a drug store, they called on Mr. Miller's father, W. R. Miller, for financial assistance. Thereafter, during the fall of 1940, Mr. and Mrs. Miller had many talks with W. R. Miller, on the subject, and it was finally agreed among all of them that the elder Miller would invest $15,000 in the business in order to purchase the drug store in question, subject to certain conditions. In the first place, this sum of $15,000 was to be used to secure interests of $5,000 to each of the three children of Sam H. Miller and Florence Miller. At that time, these children were William, aged eleven, Samuel, aged ten, and Barbara, aged eight. Mrs. Miller was also the mother of a boy, John Siebert, aged sixteen, by a prior marriage. In addition to securing interests for the three children, as above mentioned, the elder Miller was concerned about what might happen to them in the case of the death or remarriage of either of their parents. His purpose was to insure the most substantial provision for the children, in so far as he was able. After many consultations, the elder Miller required, in addition to providing three trust interests in the partnership for

the children in the amount of $5,000 each, that Sam H. Miller and Florence Miller set up trusts for the children out of their own interests in the business in such a way that each of the children would have an interest of 20% in the partnership business, with the result that each of the children and their parents would each be the owners of a one-fifth interest in the business. Mr. and Mrs. Miller agreed to this proposition."

In the present case no capital was contributed by the children or by any other person on their behalf except the shares of the partnership set aside in trust by their parents.

■■ The taxpayers argue that they were the only witnesses at the trial and that their bona fides in creating the trusts stands uncontroverted under their own testimony. It is not surprising that the taxpayers were the only witnesses, since they were the only persons familiar with the daily operations of the business. The jury was under no obligation, however, to accept their testimony without careful scrutiny. Kuney v. Frank, supra, 308 F.2d 719, 721 (C.A. 9); Anderson v. Commissioner of Internal Revenue, 250 F.2d 242, 247 (C.A. 5), cert. denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844; Chesbro v. Commissioner of Internal Revenue, 225 F.2d 674 (C.A. 2), cert. denied, 350 U.S. 995, 76 S.Ct. 544, 100 L.Ed. 860; Gloyd v. Commissioner of Internal Revenue, 63 F.2d 649 (C.A. 8), cert. denied, 290 U.S. 633, 54 S.Ct. 52, 78 L.Ed. 551. The father particularly was subjected to lengthy and thorough cross-examination. The manner and demeanor of the father and mother as witnesses were relevant factors to be considered by the jury in determining the weight to be accorded to their testimony. Stephan v. United States, 133 F.2d 87, 95 (C.A. 6), cert. denied, 318 U.S. 781, 63 S.Ct. 858, 87 L.Ed. 1148, rehearing denied, 319 U.S. 783, 63 S.Ct. 1172, 87 L.Ed. 1727.

■ The taxpayers rely upon the phraseology of the partnership agreement and trust instruments, all of which were skillfully drafted by able attorneys. Income taxes cannot be avoided by "the simple expedient of drawing up papers". Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 291, 66 S.Ct. 532, 538, 90 L.Ed. 670. The provisions of these instruments are not necessarily determinative of the bona fides of the family partnership. Kuney v. Frank, supra, 308 F.2d 719, 720 (C.A. 9).

We hold that under the record in the present case there is evidence supporting the verdict of the jury that no bona fide partnership was created between the taxpayers and the trusts.

■ The taxpayers further contend that the district judge committed prejudicial and reversible error in his charge to the jury. We find that the charge, considered as a whole, contained a correct statement of the law of income taxation relating to family partnerships.

Affirmed.

McALLISTER, Senior Circuit Judge (dissenting).

This court has, on several prior occasions, passed upon the validity of trusts in family partnerships, in tax cases, where the husband or father was the donor, and the wife or children were the beneficiaries. In those cases where the Tax Court has held that such trusts were invalid, the decisions were reversed by this court on the ground that the trusts were valid, even though the donor retained an interest in the business out of which the trusts were created, and even though no capital had been contributed to the business by the beneficiaries except the shares set aside in trust by the donor. Miller v. Commissioner of Internal Revenue, 183 F.2d 246 (C.A. 6); Miller v. Commissioner of Internal Revenue, 203 F.2d 350 (C.A. 6), and Kent v. Commissioner of Internal Revenue, 170 F.2d 131 (C.A. 6).

In the foregoing cases the Government strenuously argued that family partnerships, particularly those involving minor children who contributed no capital or services, were subject to close scrutiny

and that the evidence of such partnership was a fact for final determination by the Tax Court. But all those decisions were reversed by this court in holdings that the evidence of the witnesses sustained the validity of the trusts, and that the Tax Court had no right to disregard such evidence, even though it came from interested witnesses, on the ground that the transaction was "subject to close scrutiny" and that a factual question of good faith was presented. The rule that this court has followed in this regard is that evidence adduced from witnesses, even though they be interested, cannot be disregarded because of mere interest; and that when such evidence is credible, reasonable, uncontradicted, and unimpeached, neither the Tax Court nor a jury may disregard it on the ground that the transaction is subject to "close scrutiny," and that the jury is not at liberty, under the guise of passing upon the credibility of such witnesses, to disregard their testimony.

This case involves the validity of a partnership formed by a husband and wife, and the husband, as trustee for his three infant children. The Government challenged the validity of the partnership when it assessed deficiencies for income tax against the husband and wife. They paid the deficiencies in full and brought suit for refund in the District Court where the case was tried before a jury, which found that the plaintiffs-appellants had not proved, by a preponderance of the evidence, that the three trusts, created for the children by the parents, genuinely owned an interest in the partnership. From the judgment entered in favor of the Government, plaintiffs appealed, claiming that there was insufficient evidence to sustain the verdict, and that the District Court erroneously instructed the jury on the necessary elements of a valid family partnership.

Appellants, James D. Ballou, and his wife, Sarah L. Ballou, formed, in 1947, a business partnership for the purpose of providing office services to the public, both parties contributing capital to it, as well as their services.

After operating the partnership as husband and wife for approximately four years, Mr. and Mrs. Ballou, on December 31, 1951, created trusts for each of their minor children, James D. Ballou, Jr., Edward Wayne Ballou, and Mary Ruth Ballou, aged, respectively, seven years, five years, and eight months.

Mr. Ballou was designated trustee of each of the three trusts. Except for the names of the beneficiaries, the terms of each of the three trusts were identical. Each of the three trust instruments recited that a 15% capital interest in Ballou Services, amounting to $3,750, was transferred to each trust, or a total of $11,250 was transferred to the three trusts. The corpus of these trusts was formed by contributions made as gifts by Mr. and Mrs. Ballou from their husband and wife partnership. Out of the original partnership of Mr. and Mrs. Ballou, they, therefore, retained a 55% interest, while the total of the three trusts amounted to a 45% interest in Ballou Services.

On January 14, 1952, Mr. and Mrs. Ballou, individually, and Mr. Ballou, as trustee of each of the trusts for his children, executed a Partnership Agreement, effective January 1, 1952. This agreement created a general partnership called "Ballou Services," which was to last until December 31, 1981, unless sooner terminated.

Under the partnership agreement, Mr. Ballou was required to devote his full time and best interests to the partnership; Mrs. Ballou was to contribute such services as were necessary, and the trustee was to perform no services in the partnership *in his capacity as trustee* for the three trusts.

The salary of Mr. Ballou, as general manager, was set at $12,000 per year in 1951. This was later changed to $18,000 per year in 1955. No question is raised as to the reasonableness of this salary. Each partner was liable in full to creditors for the partnership obligations, but the trustee's liability was limited to the assets held by him for each trust. In the event of the death of Mr. Ballou or Mrs. Ballou, or at the death of

one of the beneficiaries, the remaining partners could either liquidate the partnership, or purchase the interest of the deceased member. No changes were permitted in the partnership agreement except by unanimous written consent of all of the parties thereto, including Mr. Ballou acting as trustee for each of the three trusts. Profits and losses, after deduction of Mr. Ballou's salary, were to be shared on the basis of the respective capital interests—27½% each to Mr. Ballou and Mrs. Ballou, and 15% to each of the trusts. This agreement has been complied with throughout the years in issue. If each of the three children genuinely owned a 15% interest in Ballou Services, they, in a sense, as cestuis qui trustent, were valid partners—or the trusts were valid partners—with their father and mother in the partnership.

The history of the business of Ballou Services is interesting and pertinent to the case. The company, as heretofore mentioned, was originally organized in 1947. Prior to that period, Mr. Ballou had been engaged in teaching at the Country Day School in Cincinnati. At that time, the Ballous acquired a small company, called Payroll Service Company; they had one business account; and wrote the payroll for a single business company. Unfortunately, for the Ballous, the company withdrew their account and decided to prepare their own payroll; and this left the Ballous with nothing in their business venture. They then started with the capital that they had—$2,500—to carry on the same type of work and to expand it; and, instead of working from their home, they found it advisable to work from a business address. Accordingly, they rented space in the Transportation Building in Cincinnati with a listed office telephone number, as well as their own home telephone number. The business then became largely one of acquiring qualified office personnel, such as business enterprises require for temporary work, overload, and periods during which their regular personnel are on vacation. Mrs. Ballou, at that time, took many business telephone calls at her home, in addition to those at the downtown office. The business began to expand and as they acquired more capital, they moved from a rented desk in one room, and got to the point where they had a room of their own. At first, they had no office equipment but, thereafter, as money became available, they purchased considerable equipment of this type. Thereafter, they opened a temporary office in Columbus, Ohio, in addition to their Cincinnati office and, subsequently, opened offices in Indianapolis, Cleveland, and Detroit. They owned typewriters, calculators, adding machines, miscellaneous equipment and automatic typing equipment, and, as of January 1, 1956, the cost of the equipment so acquired was $72,068.33. At that time, the partnership had cash assets of $71,002.51; accounts receivable in the amount of $52,537.48; and intangible assets in the amount of $1,230. They owed in accounts and notes payable, $18,212.18; accrued payroll taxes, $18,380.03, and Indiana gross income tax, $287.16.

During the years here involved, 1956, 1957, and 1958, and during all the preceding years subsequent to the execution of the trust agreement and the partnership agreement, Mr. and Mrs. Ballou carried on the business of Ballou Services, starting from practically nothing, until it has become a remarkable and flourishing business enterprise, resulting from, and depending upon, the energy, labor, imagination, courage, and perseverance of this husband and wife having a total interest in the partnership of 55%, with 45% allocated to the children under the trusts provided for them. It is truly an admirable achievement for a school teacher and his wife, who started out with so little, to put by a substantial estate for their three children, and succeeded so well in accomplishing their objective.

For the calendar years of 1956, 1957, and 1958, Mr. and Mrs. Ballou filed joint income tax returns, and paid to the District Director of Internal Revenue the taxes assessed against them on such returns. In the returns, Mr. and Mrs. Ballou reported, as their joint income from

Ballou Services, the salary paid to Mr. Ballou, and their portion of 55% of the partnership profits for each of the years distributable to them under the partnership agreement. As trustee, Mr. Ballou reported and paid income tax for each of the three trusts, on a total of 45% of the partnership profits, 15% distributable to each of the trusts.

Before the years 1956, 1957, and 1958, the periods here in question, the Government had challenged the validity of the Ballou Services partnership after Mr. Ballou had first reported the three trusts as partners, and paid income tax for each of such trusts; and the Commissioner had assessed deficiencies for the years 1952, 1953, 1954, and 1955 (years not here in question) on the ground that the trusts were not bona fide partners in Ballou Services. However, all of these deficiencies were settled with the Appellate Staff of the Commissioner by Mr. Ballou by the payment of one-third of the claimed deficiencies. The payment of this one-third was made from, and the expense thereof was thereafter, proportionally, attributed to, the 55% interests in the partnership of Mr. and Mrs. Ballou, and the 45% interest in the partnership of the trusts—15% to each of the three trusts.

On February 10, 1961, the Commissioner of Internal Revenue issued to Mr. and Mrs. Ballou a statutory notice of deficiencies in income taxes for the years 1956, 1957, and 1958 (the years here in question) and interest thereon, in a total amount of $32,217.05, based on the ground that the trusts set up for the children by their parents were not bona fide trusts because they were not good faith gifts in trusts of interests in the partnership; that there was no intention of the partners to join such partnership; that the partners did not own a capital interest in the partnership; and that capital was not a material income-producing factor in the partnership business of Mr. and Mrs. Ballou and the three trusts for their children during the taxable years in question.

On the trial before the District Court, the parties agreed upon a stipulation of facts which eliminated all factual questions except (1) those involving the bona fides of the gifts in trusts of interests in the partnership; (2) the intention of the partners to join in the partnership, and (3) the materiality of capital as an income-producing factor in the business.

Counsel for the Government, on this appeal, emphasizes a number of general propositions of law, but we find their application to the facts in this case is fanciful and ignores several cases in which opinions of this court have concerned similar issues where the Commissioner's contentions were overruled, and the decisions of the Tax Court sustaining them were reversed.

All of the testimony with regard to the trusts for the children is found in the testimony of Mr. Ballou and Mrs. Ballou.

Mrs. Ballou, on direct examination, testified:

"Q. Now, turning now, Mrs. Ballou, more to 1951, in the fall of 1951, at the time at which you and your husband created the trusts for the benefit of your children, what was the purpose of the creation of these trusts?

"A. Well, prior to this time we had invested all available money, or anything we had, in the business. The children had—We had no funds whatsoever for the children as such, I mean in their own right, and we felt that as a means of starting an account for each child we would create this trust fund and it would be such that we could not use the money ourselves for our own personal use, but rather for them.

"Q. And did you visit an attorney at that time?

"A. Yes. We contacted—or we had had Mr. Bill Davis, who is an attorney in the city, for some other things, and we had talked this over with him and, since he was not an attorney of this nature, he referred us to the law firm of Taft, Stettinius and Hollister, and you were the one—Mr.

Vogeler was the one who helped us with this then.

"Q. Now, Mrs. Ballou, the original impetus for your thinking about setting up trust funds and forming a partnership with the trusts came from whom?

"A. Ourselves.

"Q. When you entered into the trust agreement, Mrs. Ballou, did you at that time contemplate that the partnership agreement would also be entered into shortly thereafter?

"A. Yes.

"Q. Now, why did you name Mr. Ballou as trustee?

"A. Well, first Mr. Ballou would serve as trustee without salary. Secondly, from my own personal standpoint, I was well pleased with the way that he had handled my original investment, which was $1,250 or half. I felt that if he could do equally as well for each of the children I would be quite happy."

On direct testimony, Mr. Ballou testified as follows:

"Q. Could you explain to us, Mr. Ballou, at the time in 1951 when you and Mrs. Ballou were considering the creation of trusts what the purpose was in your mind for the creation of such trusts?

"A. We were attempting to supply some method of protecting our children, to set up something that eventually would mean money to them.

"Q. Would it have been possible to give them money?

"A. If we had sold our business it would have been possible. Actually, in this type of business, after paying all our expenses and taxes and tithing our money, there was so little left that we just couldn't take money out of the business. So that this was just simply a method which we used to try to safeguard our children and at the same time to permit our business to grow as it was growing.

"Q. When you created the trust for your son and helped to create the trust for your second son, did you make a gift to the trust of a part of your interest in the partnership of Ballou Services?

"A. Yes.

"Q. At the time that you made that gift did you intend not to give it?

"A. No, we did not—We intended it would be irrevocable and, since then, maybe wished we hadn't but it was a definite gift.

"Q. When you executed a partnership agreement, Mr. Ballou, as a partner in your own name with the trusts and with Mrs. Ballou, did you actually and really and truly intend to operate a partnership of the five entities?

"A. We did.

"Q. And did you carry out that intention, Mr. Ballou?

"A. Yes.

"Q. Did the trusts actually own a capital interest in the partnership, Mr. Ballou?

"A. Yes.

"Q. What was the capital of the partnership on December the 31st, 1951?

"A. $25,000.

"Q. And what part of that capital was given to each of the three trusts by you and Mrs. Ballou?

"A. Fifteen percent or $3,750.

"Q. Were records kept, Mr. Ballou, of the trust for James D. Ballou, Jr., Edward Wayne Ballou and Mary Ruth Ballou showing the original contribution to the trust and its increases and subtractions?

"A. Yes.

"Q. And have those records been kept from 1952 to date?

"A. Yes."

\* \* \* \* \* \*

"Q. Do these indicate that there was credited to the account of the trust

the share of the partnership profits of each of the three trusts—

"A. Yes."

\* \* \* \* \* \*

"Q. Mr. Ballou, do the records continue for '56, '57 and '58 in the same general way as those you have just read to us?

"A. Yes.

"Q. And do these indicate that the shares of the partnership income and profit that was payable to the trust was actually paid to the trust?

"A. Yes."

\* \* \* \* \* \*

"Q. Were any of the funds of the trusts for the children ever used by you and Mrs. Ballou for the support of your children?

"A. No."

On cross examination, Mr. Ballou testified as follows:

"Q. And isn't it a fact, Mr. Ballou, that the trusts never paid Mr. Vogeler a penny for his services? You paid Mr. Vogeler? Mr. Vogeler was the only lawyer; is that so?

"A. Is that bad?

"Q. I beg your pardon? I beg your pardon?

"A. Is that bad?

"Q. Oh, no."

\* \* \* \* \* \*

"Q. Mr. Vogeler was your only attorney advising you on this adjustment; is that correct?

"A. Yes.

"Q. Who paid Mr. Vogeler for his services?"

\* \* \* \* \* \*

"A. The trust did not pay any of the legal expenses."

Keeping in mind the foregoing testimony, we will proceed to a consideration of the law and its application to the facts, as well as to the arguments of the parties.

We shall discuss first the arguments of the Government which are claimed to justify the judgment against Mr. and Mrs. Ballou, and the determination holding that the trusts of the three children were invalid, because there was no intention of the partners of the trusts, as partners, to join Ballou Services.

The Government says, in support of the verdict of the jury, that the evidence shows that the trusts were not true partners in Ballou Services. Ordinarily, it is submitted by the Government, that participation in the management of the business is strong evidence that the partner exercises dominion over his own interest, and that, as minors, the Ballou children could not be expected to take part in the partnership affairs.

However, the foregoing is true in every case of a family partnership where trusts for infants, in which a parent is trustee, are partners; and we have repeatedly held that such partnerships are valid.

In Miller v. Commissioner of Internal Revenue, 203 F.2d 350 (C.A. 6), not argued by the Government, or cited in its brief, a husband and wife in a family partnership transferred from their interests existing therein, a one-fifth interest in the partnership to their son, William, aged eleven; a one-fifth interest to their son, Samuel, aged ten; and a one-fifth interest to their daughter, Barbara, aged eight. According to the trust instrument, the purpose of the parents was to insure a substantial provision for the benefit of their three children. In the instrument establishing the trusts for the children, the husband and wife, as trustees, were given power to control the trust interests in the business, as though the trustees were the sole owners of such interests; to control the management and investment of the trust funds; to make other investments from either principal or interest at their discretion; and to withdraw whatever compensation, as trustees, they saw fit, up to the full amount of the annual income. The trust agreement also provided that all additional trust income was to be added to principal, with no distribution to the children until the dissolution of the trusts, which

was to occur when the youngest surviving child reached the age of twenty-five years, and after the death of Mr. Miller, the father and trustee. For these facts, see Miller v. Commissioner of Internal Revenue, 183 F.2d 246 (C.A. 6). The trusts were irrevocable, and neither Mr. Miller nor Mrs. Miller had any right therein to exercise, nor had they ever attempted to exercise, any dominion or control over the interests in the partnership represented by the trusts, except in their fiduciary capacity as trustees. Although, as mentioned, the Millers were authorized to use income from the trusts up to the total income for any one year for themselves as compensation as trustees, this was provided because one could not in the running of that business, tell whether he would need the money in case the business started "going backward." However, as this court said: "In any event, such right to compensation was not without limit. Compensation for services as a trustee could not have exceeded, in this case, what was reasonable under the circumstances, and a control over such matters as compensation of trustees is exercised by courts of equity in which the beneficiaries of the trusts could resort in case of arbitrariness, oppression, or excessive payment or withdrawal of compensation." Miller v. Commissioner of Internal Revenue, 203 F.2d 350, 352. Moreover, any excessive payments of compensation could, by a court of equity, be charged against the trustees, or their estates.

From the foregoing, the fact that the infant children did not participate in the management of the business, and the fact that they were of tender age were no indications or evidence that the partnership was a sham, or that it was invalid; and the complete supervision and management of the business by the father trustee, did not make the partnership invalid or cast doubt upon the validity of the trusts for his children.

It is argued, in the present case, that the circumstance that no capital was contributed by the children or by any other person on their behalf, except the shares of the partnership set aside in trust by their parents, is a significant fact, indicating that the trusts were not valid, and that the parents are still the owners of the shares. This is not the law. In a family partnership, a gift by the husband as donor of his entire interest, or, in effect, his entire interest, in trust, to his wife, is not evidence that the trust was invalid simply because of the relationship of husband and wife. Kent v. Commissioner of Internal Revenue, 170 F.2d 131 (C.A. 6). The fact that such a transaction must be closely scrutinized does not mean that the bona fides of the transaction may be attacked, when the evidence remains unchallenged by contrary proofs or by destructive analysis. The proofs in the instant case consisted of the credible, reasonable, uncontradicted, and unchallenged testimony of the husband and wife. The partnership agreement of Mr. and Mrs. Ballou and of Mr. Ballou, as trustee for each of the trusts for his children, was in writing and executed in January 1952. The books of the company at all times showed the interests of each of the children, as represented by their trusts. The entire transaction relating to the trusts for the children was discussed by Mr. Ballou, in his effort to provide for the financial security of his children, in a number of consultations with his legal counsel, Alan R. Vogeler, a lawyer of integrity and standing in Cincinnati; and the trust agreement, executed as a result of the counsel of Mr. Vogeler, was directed to providing financial security for the children. Mr. Vogeler represented Mr. and Mrs. Ballou on the trial of the instant case, and there is no disposition, as far as can be seen, on the part of the Government, to question his good faith in the advice given to his clients in seeking to arrange for the security of their children by means of these trusts.

It is further argued by the Government that the father, Mr. Ballou, in his capacity *as trustee* of the respective trusts of his infant children, was expressly prohibited by the partnership agreement

from performing any services for the partnership; that this exclusion from management of the partnership affairs is a strong indication that Mr. and Mrs. Ballou, and not the trustee, are the persons making the business decisions which affect the trusts' interest as well as their own; and that such control strongly suggests that the trusts were not true partners in Ballou Services.

The fact that Mr. Ballou, the father, and the trustee for the three trusts of his children, was expressly prohibited by the partnership agreement from performing, *in his capacity as trustee,* any services for the partnership, does not mean that he was not bound to protect their rights. The favorable effects for the trusts resulting from such provision were that the father, of course, could not charge the trusts for services performed for the partnership; but that redounds to the interests of the trusts; and although he could not, as trustee, perform services for the partnership, he was subject to the control of the courts for the faithful discharge of his duties as trustee, and was responsible to the control of the courts for any failure of such faithful discharge of duty. See Miller v. Commissioner of Internal Revenue, 203 F.2d 350 (C.A. 6). Control over trustees is exercised by courts of equity, and a trustee is liable for failure of faithful performance of his duties as a trustee, and he and his estate are liable to the trusts for failure of such faithful performance. The idea that the trusts were invalid because the infant children could not take part in the partnership affairs, and that Mr. Ballou, who was trustee, could not, as trustee, perform services for the partnership, seems farfetched and without merit. How could this fact "strongly suggest that the trusts were not true partners"? Would the fact that, as trustee, Mr. Ballou would be authorized to perform services for the partnership as well as being entitled, as a managing partner, to perform such services, more strongly suggest that the trusts were true partners? If Mr. Ballou were, by the partnership agreement, au-

thorized as a trustee, as well as individually, to perform services for the partnership, it would, if anything, seem to place more control in his hands than would the provision that he could not, as trustee, perform services for the partnership.

As a managing partner, Mr. Ballou would be responsible to all the other partners, even if there were no trusts. As a partner, he could not profit himself at the expense of his partners. Whatever a person does, as a partner, must be done for the benefit of the partnership and not to its detriment and disadvantage for his own profit.

What difference does it make that Mr. Ballou was prohibited by the partnership agreement from acting, as trustee, in performing services for the partnership, while, as an individual he was authorized to manage the partnership? The only difference we can see is that the trusts would not be charged for services rendered by Mr. Ballou, *as trustee,* in performing such services. He still was bound as a trustee to protect, as far as possible, the interests of the children under the trusts, and any conduct on his part for his personal interest, at the expense of the interests of the trusts, would be set aside by a court of equity, and the trustee, for any such conduct, would be responsible for any damages resulting.

The fact that, *as trustee,* Mr. Ballou, the father, was not to perform services for the partnership, was not a "strong indication" that the trusts were not true partners in Ballou Services, since, as trustee, he was under the strict obligations of equity to protect in every way the interests of his children's trusts; was responsible to a court of equity for the faithful performance of such a duty; and also, as the managing partner, was under the obligation of faithful performance of his duty as a partner and was responsible to the court and liable for any profit to himself at the expense of the rights of the other partners.

The Government further insists that since the partnership agreement provided that no partner may sell, assign, pledge,

or mortgage his interest without the consent of the remaining partners, the trusts have been effectively deprived of the right to withdraw from the partnership, and that Mr. Ballou, as trustee, consequently, is not able to fulfill his fiduciary duty of protecting the beneficiaries by changing the form of the trusts' investments, and that such a limitation on a right of a donee to liquidate or sell his interest at his discretion, is a circumstance which tends to show that the donee —that is, the trust—is not the real owner of his apparent capital interest.

The provision in a partnership agreement that a partner cannot sell or assign his interest without the consent of the other partners, is a common provision in a partnership agreement, and is employed to protect the interests of the partners themselves, and the partnership.

In a partnership in which the trusts of the children are partners and their share in the partnership is the result of a gift from their parents, and their father undertakes to manage the partnership, devoting thereto his full time and best interest, and, with his wife's efforts, brings about a successful business enterprise, with no risks to, and with great advantage to, the children, it is untenable to conclude that, because by the terms of the partnership agreement, the children, or the trusts created for them, cannot sell or assign their interests at will, and thus end the partnership, such trusts are a sham, because of what would seem to be a tortured interpretation of some Regulation. The fact that the father is both a partner, and a trustee for his children's trusts, and that none of the partners, including the trusts, can sell or assign their interests in the partnership without the consent of the other partners, in no way tends to show that the donees—that is, the trusts—are not real owners of their interests in the partnership. The argument to the contrary results from a tangle of words and ideas, and is contrary to good sense. It is incredible that the father, *as trustee,* in carrying out the faithful performance of his duty,

would want to sell or assign the interests of any of the trusts against his own consent, *as an individual,* or his wife's consent. The contention of the Government in this regard is without merit. The partnership in this case in no way tends to show that the donees of the trust agreement are not the real owners of their interests as recited therein.

It is further contended by the Government that a trust in a family partnership may be recognized only as a partnership if the trustee actively protects the interests of the beneficiaries, and does not subordinate their interests to his own. Obviously, this is true. But, says the Government, in the present case there were no distributions of partnership income to the trusts except the sums needed to pay taxes and fulfill charitable contributions called for by the trust agreement; and the balance of income was retained in the partnership, even though there was no clear showing that the sums were needed in the business, and despite the fact that, in the trust instrument, this balance was to be added to the principal in the trusts. Particularly, says the Government, this is true where the trusts are not even subject to judicial supervision.

However, in the trust agreement, it is provided that the trustee shall have full power and authority, in his discretion, to invest and reinvest all or any part of the trust assets in such manner, at such times, and upon such terms as he deems advisable, and with any proceeds thereof to acquire other property of any kind whatsoever, which shall thereupon become part of the trusts and subject to like power and authority of the trustee; and to execute any instruments or documents in writing necessary to carry out any of the powers given in the trust instrument, and generally to do and perform all acts and things that may be necessary or proper in connection with the management of the trusts; and that the trustee shall accumulate the balance of the net income of the trusts and add it to the principal.

Certainly, the foregoing would authorize the trustee to enter into the partner-

ship agreement with himself, his wife, and the three trusts as partners. As far as the accumulation of the net income for the purpose of adding it to the principal, the trustee was authorized to *invest* and reinvest *all* or any part *of the trust assets* at any time upon such terms as he deemed advisable, *and with any* proceeds *of the trust assets to acquire any other property* of any kind which should thereupon become part of the trust.

From the foregoing, it cannot be held that because the trustee continued to invest the proceeds of the trust assets in the acquisition of additional income-producing property for the partnership, and, necessarily, for the trusts, which were partners, he violated the terms of the trust instrument, which, of course, also provided for the accumulation of the balance of net income of the trusts and addition thereof to principal. By the provision authorizing the trustee to invest the proceeds of the trust assets as he deemed advisable and to acquire any other property which would thereupon become part of the trusts, he could use any income of the trusts for this purpose and could invest in the partnership business any accumulation of net income, as well as the trust assets themselves.

The foregoing conduct of the trustee, in accordance with the specific language of the trust instrument, is no indication or evidence whatever that the trusts were a sham.

However, continuing, the Government says that as far as the income from the trusts was concerned, the taxpayer-father and trustee had no less control over the income after the creation of the trusts than before their creation, and that "Particularly is this true where the trusts are not even subject to judicial supervision." But after the creation of the trusts, the father's control was bound to be exercised for the benefit of the trusts while, before the creation of the trusts, his control was subject to no one or nothing except his own interest and profit, and, at that time he owed no duty to any trust. As to the trusts being subject to the judicial re-view, we have already emphasized that control over trustees for the faithful discharge of their duties is exercised by courts of equity, to which the beneficiaries of the trusts may resort in connection with arbitrariness, oppression or excessive payment, or withdrawal of compensation, or diversion of moneys or property for the personal benefit of the trustee, at the expense of the trusts. Miller v. Commissioner of Internal Revenue, 203 F.2d 350, 352.

We come, then, to the claim that Mr. Ballou, in a particular instance, subordinated the interests of the trusts to his own personal interest and advantage.

When the Commissioner refused to recognize the partnership of Mr. Ballou, Mrs. Ballou, and the three trusts for the years 1952–1955 (prior to the taxable years here in question) and assessed deficiencies against Mr. and Mrs. Ballou on the ground that the trusts were invalid, Mr. Ballou and his counsel took the matter up with the Commissioner and his Appellate Counsel and after considerable negotiations, finally settled the claim of the Government by the payment of one-third of the claimed deficiencies.

At all times, Mr. Ballou continued to act as trustee for the three trusts, before and after the payment of one-third of the claimed deficiencies. Subsequently, the payment made in settlement of the deficiencies was allocated by Mr. Ballou as an expense among all of the partners, proportionate to their interest in the partnership—including Mr. Ballou, Mrs. Ballou, and each of the three trusts. This allocation of expense, the Government claims, shows the subordination of the trusts' interests to Mr. Ballou's own interest. The payment of one-third of assessed deficiencies in settlement of the entire claim was made upon the assumption that the partnership still existed, and was made for the benefit of the partnership. It is rather absurd to think that Mr. Ballou subordinated the trusts to his own interest but allocated the expense of the one-third payment in settlement of the alleged deficiencies, among the five

partners—himself, Mrs. Ballou, and the three trusts, when if he did not do so and if he agreed with the Commissioner that the trusts were invalid, he could have secured for himself and taken over the 45% interest in the business. The allocation was the proper method to follow if the trusts were valid and if Mr. Ballou considered them valid. The settlement payment was made in keeping with Mr. Ballou's intention that the business was to be continued with such trusts as partnership interests and that the trusts were real. Everything done by Mr. Ballou in this transaction clearly points to the fact that he was acting to preserve and continue the trusts as valid trusts and as capital interests in the partnership, and there is no indication whatever that he was subordinating the interests of the trusts to his own personal interest.

We have recounted all of the arguments of the Government—that there was no intention on the part of the parents to create the trusts; that there was no intention that the trusts would be partners; that the trustee did not, *as trustee,* perform services for the partnership; that since the trustee, as a partner, could not sell the interest of a trust without his consent, in his individual capacity as a partner, the trustee was not able to fulfill his fiduciary capacity, and, consequently, this tended to show that the trust was not the real owner of the capital interest; that there was no distribution of partnership income to the trusts; that there was no judicial control over the trustee in relation to his dealings with the trusts; and that Mr. Ballou had subordinated the interests of the trusts to his own selfish interest, in allocating among all of the partners, proportionate to their interest in the partnership, the expense of settling the income tax assessment levied by the Commissioner on the ground that the trusts were a sham and non-existent.

All of these contentions have, we trust, been completely answered and disproved in our discussion of the case.

In Miller v. Commissioner of Internal Revenue, 183 F.2d 246, 252, 253 (C.A. 6), this court said:

"As Judge Simons pointed out in Lawton et al. v. Commissioner [of Internal Revenue], 6 Cir., 164 F.2d 380, a family partnership for income tax purposes is to be judged in the light of partnerships in general, according to the definition given in Ward v. Thompson, 22 How. 330, 16 L.Ed. 249: 'A partnership is generally said to be created when persons join together their money, goods, labor or skill for the purposes of carrying on a trade, profession, or business, and when there is a community of interest in the profits and losses.' In the Lawton case, and in Kent v. Commissioner [of Internal Revenue], 6 Cir., 170 F.2d 131, this court reversed decisions of the Tax Court and upheld the validity of family partnerships for income tax purposes, although, in those cases, the wife's capital contribution to the partnership was received as a gift from the husband. This was in keeping with what the Supreme Court said in the Tower case, to the effect that there was no reason why the general concept of a partnership that rules in ordinary commercial-law cases 'should not apply in tax cases where the government challenges the existence of a partnership for tax purposes.' Commissioner [of Internal Revenue] v. Tower, 327 U.S. 280, 287, 66 S.Ct. 532, 536, 90 L.Ed. 670, 164 A.L.R. 1135. The same view was also emphasized by Mr. Justice Frankfurter, in his concurring opinion in the Culbertson case, where he observed that the test of a valid family partnership for tax purposes should be the same as the test for any partnership regardless of the involvement of income tax namely, that the controlling consideration is whether the parties intend to join in a business venture. Accordingly, there seems to be no reason why a husband's irrevocable gift to his wife of a partnership interests should not make her a partner even

though she contributes no services. The determining question is whether the husband and wife really intend to carry on the business as copartners, * * *."

There is nothing in this case that suggests Mr. and Mrs. Ballou were conspiring in a sham transaction in order to make it appear that the trusts created for their children were valid, when they were merely to avoid payment of a portion of their individual income tax liability. There is nothing to suggest that the partnership, including the three trusts, was a sham because of the fact that the infant children did not participate as partners instead of through their father acting as their trustee. There was no evidence showing, or tending to show, that Mr. Ballou was subordinating the interests of the trusts to his own selfish interest at the expense of the trusts. Everything in which Mr. and Mrs. Ballou were concerned shows a clear intention to create valid trusts, and to form a valid partnership with the trusts as participating partners.

It is argued that the manner and demeanor of the father and mother as witnesses in this case, and donors of the trusts, were relevant factors to be considered by the jury in determining the weight to be accorded to their testimony, and that the jury could judge of the manner and expression of Mr. and Mrs. Ballou, the only witnesses in the case, and arrive at a conclusion that their testimony should be disregarded. We are of the opinion that this does not constitute the rule of law applicable in the present case.

The leading case on this subject is Chesapeake & Ohio Ry. v. Martin, 283 U.S. 209, 216–220, 51 S.Ct. 453, 75 L.Ed. 983, where the Supreme Court thoroughly analyzed the problem in its holding, in which it declared:

*"We recognize the general rule, of course, as stated by both courts below, that the question of the credibility of witnesses is one for the jury alone; but this does not mean that the jury is at liberty, under the guise of passing upon the credibility of a witness, to disregard his testimony, when from no reasonable point of view is it open to doubt. The complete testimony of the agent in this case appears in the record. A reading of it discloses no lack of candor on his part. It was not shaken by cross-examination; indeed, upon this point, there was no cross-examination. Its accuracy was not controverted by proof or circumstance, directly or inferentially; and it is difficult to see why, if inaccurate, it readily could not have been shown to be so. The witness was not impeached; and there is nothing in the record which reflects unfavorably upon his credibility. The only possible ground for submitting the question to the jury as one of fact was that the witness was an employee of the petitioner. In the circumstances above detailed, we are of the opinion that this was not enough to take the question to the jury, and that the court should have so held.*

"It is true that numerous expressions are to be found in the decisions to the effect that the credibility of an interested witness always must be submitted to the jury, and that that body is at liberty to reject his testimony upon the sole ground of his interest. But these broad generalizations cannot be accepted without qualification. Such a variety of differing facts, however, is disclosed by the cases that no useful purpose would be served by an attempt to review them. In many, if not most, of them, there were circumstances tending to cast suspicion upon the testimony or upon the witness, apart from the fact that he was interested. We have been unable to find any decision enforcing such a rule where the facts and circumstances were comparable to those here disclosed. Applied to such facts and circumstances, the rule, by the clear weight of authority, is definitely to the contrary. Hauss v. Lake Erie & W. R. Co. [6 Cir.], 105 Fed. 733; Illinois Cent. R. Co. v. Coughlin [6 Cir.], 132 Fed. 801, 803; Hull v. Lit-

tauer, 162 N.Y. 569, 57 N.E. 102; Second Nat. Bank v. Weston, 172 N.Y. 250, 258, 64 N.E. 949; Johnson v. N. Y. C. & H. R. R. Co., 173 N.Y. 79, 83, 65 N.E. 946; St. Paul Cattle Loan Co. v. Houseman, 54 S.D. 630, 632, 224 N.W. 189; M. H. Thomas & Co. v. Hawthorne [Tex.Civ.App.], 245 S.W. 966, 972; Dunlap v. Wright [Tex.Civ. App.], 280 S.W. 276, 279; Still v. Stevens [Tex.Civ.App.], 13 S.W.(2d) 956; Marchand v. Bellin, 158 Wis. 184, 186, 147 N.W. 1033. Of like effect, although in a different connection, see also Roberts v. Chicago City Ry. Co., 262 Ill. 228, 232, 104 N.E. 708; Veatch v. The State, 56 Ind. 584, 587; Marq., Hought. & Ont. R. R. v. Kirkwood, 45 Mich. 51, 53, 7 N.W. 209; Berzevizy v. D., L. & W. R. R. Co., 19 App.Div. (N.Y.) 309, 313, 46 N.Y.S. 27; Miller's Will, 49 Ore. 452, 464, 90 Pac. 1002.

"In Hull v. Littauer, supra, the doctrine that the question of credibility of a witness must be submitted to the jury was held to be not an inflexible one, even though such witness be a party to the action. In that case the defendants moved for direction of a verdict in their favor, which was resisted by plaintiff on the ground that the proof upon which the motion was based rested upon the evidence of interested parties. The court, nevertheless, sustained the motion. On appeal the State Court of Appeals affirmed this judgment, saying (page 572 of 162 N. Y., 57 N.E. 102):

"'It is true that the evidence to establish the entirety of the contract was given by the defendants; but the rule which the plaintiff invokes is not applicable to such a case as this. Generally, the credibility of a witness, who is a party to the action, and therefore interested in its result, is for the jury; but this rule, being founded in reason, is not an absolute and inflexible one. If the evidence is possible of contradiction in the circumstances; if its truthfulness, or accuracy is open to a reasonable doubt upon the facts of the case, and the interest of the witness furnishes a proper ground for hesitating to accept his statements,—it is a necessary and just rule that the jury should pass upon it. Where, however, the evidence of a party to the action is not contradicted by direct evidence, nor by any legitimate inferences from the evidence, and it is not opposed to the probabilities, nor, in its nature, surprising or suspicious, there is no reason for denying to it conclusiveness. Though a party to an action has been enabled since the legislation of 1857, (CH. 353, Laws of 1857), to testify as a witness, his evidence is not to be regarded as that of a disinterested person, and whether it should be accepted without question depends upon the situation as developed by the facts and circumstances and the attitude of his adversary. In Lomer v. Meeker, 25 N.Y. 361, where the defense to an action upon a promissory note was usury, and the indorser gave the evidence to establish it without contradiction, it was said that "it was the duty of the court, in such case, to dismiss the complaint, or nonsuit the plaintiff, or direct a verdict for the defendants. It is a mistake to suppose that, because the evidence came from the defendant, after the plaintiff had rested, the case must go to the jury. * * * The argument is that this could not properly be done, because there was a question of credibility raised in respect to the witness Bock, who proved the usury. But this objection is untenable. The witness was not impeached or contradicted. His testimony is positive and direct, and not incredible upon its face. It was the duty of the court and jury to give credit to his testimony." More recently, in Kelly v. Burroughs, 102 N.Y. 93, 6 N.E. 109, Judge Danforth, after observing that, as the facts were not disputed, there was no occasion to present them to the jury,

said "the mere fact that the plaintiff, who testified to important particulars, was interested, was unimportant in view of the fact that there was no conflict in the evidence, or any thing or circumstance from which an inference against the fact testified by him could be drawn." '

"In Hauss v. Lake Erie & W. R. Co., supra, a direction of the trial judge to find for the defendant was sustained although the motion rested upon the testimony of the conductor of the train. The court put aside the objection that the witness was an employee of the defendant and had an interest to show that he had performed his duty and a motive falsely to represent that he had done so, saying ([105 F.] p. 735):

> " 'The testimony of the witness was not contradicted by that of any other witness, nor was it brought in question by the cross-examination nor by the admitted facts of the case; and, outside of the suggested interest and motive, there is not a fact or circumstance in the case which tends to raise a doubt as to the truth of his testimony.'

And, at p. 736:

> " ' * * * nor do the facts and circumstances of the case justify an impeaching presumption against the credibility of the witness, founded upon his mere relation to the parties and to the subject-matter of the controversy, which should overcome the counter presumption that, as an uncontradicted witness, testifying under oath, he spoke the truth.'

"In M. H. Thomas & Co. v. Hawthorne, supra, [245 S.W.] at p. 972, the rule is thus stated:

> " 'A jury cannot arbitrarily discredit a witness and disregard his testimony in the absence of any equivocation, confusion, or aberration in it. It is not proper to submit uncontradicted testimony to a jury for the sole purpose of giving the jury an opportunity to nullify it by discrediting the witness, when nothing more than mere interest in the case exists upon which to discredit such witness. The testimony must inherently contain some element of confusion or contrariety, or must be attended by some circumstance which would render a total disregard of it by a jury reasonable rather than capricious, before a peremptory instruction upon the evidence can be said to constitute an invasion of the right of trial by jury. That it is proper for a trial court to instruct a verdict upon the uncontradicted testimony of interested parties, when it is positive and unequivocal and there is no circumstance disclosed tending to discredit or impeach such testimony, can be said to be a settled rule in Texas.' " (Emphasis supplied.)

"Human experience teaches that the concern of parents over the financial security of their children is often greater than concern for their own security and enjoyment of the fruits of their labors." Miller v. Commissioner of Internal Revenue, 203 F.2d 350, 354 (C.A. 6).

It is clear that the gifts of Mr. and Mrs. Ballou to the three trusts were valid transfers that conferred the genuine ownership of a capital interest which was a material income-producing interest.

In Miller v. Commissioner of Internal Revenue, 203 F.2d 350, 353 (C.A. 6), the court said:

> "In considering the facts as found by the Tax Court and determining whether they are sustained by substantial evidence, Judge Simons, speaking for this court, in Lawton v. Commissioner [of Internal Revenue], 6 Cir., 164 F.2d 380, said that it was 'out of such gossamer threads of circumstance that the findings and conclusions of the Tax Court are woven, and it becomes our duty to determine whether findings and conclusions are based upon substantial evidence as that phrase has

repeatedly been defined by the Supreme Court, particularly in Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 198, 59 S.Ct. 206, 217, 83 L.Ed. 126, wherein it was said, "substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' 164 F.2d page 383. The court continued: 'We are aware, of course, that the Tax Court is not required, at all events, to believe the testimony of witnesses, or even to accept at face value documents offered in evidence, but it appears to be well settled that the fact finder may not arbitrarily disregard undisputed and uncontradicted testimony of unimpeached persons where he has already found facts which lend a flavor of truthfulness to their assertions. Hughes v. Commissioner [of Internal Revenue], 5 Cir., 153 F.2d 712; Bardach v. Commissioner [of Internal Revenue], supra [6 Cir., 90 F.2d 323]; Voltz v. Treadway & Marlatt, 6 Cir., 59 F.2d 643. As so well expressed by the late Judge Denison in Rookwood Pottery Co. v. Commissioner [of Internal Revenue], 6 Cir., 45 F.2d 43, 45, "when the proofs so introduced remain unchallenged by contrary proofs or by destructive analysis, it was the duty of the commissioner to decide the issue in accordance with the proof then appearing before him; and it was, we think, the duty of the board to take the same view." ' "

Considering substantial evidence as meaning such relevant evidence as a reasonable mind might accept to support a conclusion, we are of the opinion that the verdict in this case was not sustained by substantial evidence. The proofs of the appellants, Mr. and Mrs. Ballou, that they provided the trusts, out of their own property, for their children, and formed a partnership in which such trusts should participate in the business as partners in order to secure an adequate provision from the activities of their parents, bear the mark of truthfulness. These proofs

remained unchallenged by contrary proofs, or by destructive analysis. Such proofs required the court and the jury to decide the issues in accordance with these proofs.

We do not, in any way, impugn the good faith, fairness, or intelligence of the jury in this case. But it is beyond the capacity of legal comprehension of most people to understand how a father can, in a partnership, act as an individual partner, and also as a partner who is trustee for his children—and, because of these facts, act as one person in two entirely different capacities, operating the business in the same manner in which he operated it before any trusts were created, and without any one of the trust partners being represented in the partnership except by himself. This is especially so, when the father's *individual* income tax is lower when he acts as trustee, as well as in an individual capacity.

But this is not a difficult problem for one versed in the law—that, while one person carries on the business of a partnership as managing director, and also acts as a partner by virtue of being a trustee for another, he can direct the operations of the company as he sees fit and use his own profits therefrom for himself; but he is limited to the point that the company must also be operated for the benefit of the trusts as well as for himself; he is limited in exercising over the trusts only the rights of a trustee; and he is accountable to a court of equity for the faithful performance of his duty as such trustee.

Moreover, when the father was assessed income tax as an individual for all of the partnership income, on the ground that the partnership was invalid because the trusts were not real, and when, rather than fight it out in the Tax Court, the father paid such taxes in order to sue in the District Court to recover the payment on the ground that the trusts and partnership were valid, he was faced with a question asked, before the jury, by Government counsel:

"Q. Isn't it a fact, Mr. Ballou, that if the trusts are recognized for income

tax purposes, you will receive back from the Government 11,000 some odd dollars in tax money?

"A. Yes."

Of course, if the trusts were valid, Mr. Ballou would be entitled to recover from the Government the money he would be obliged to pay the Commissioner under the latter's insistent stand that the trusts were invalid. But the question asked by Government counsel was enough to induce the jury, in this complicated tax case, to believe that Mr. Ballou was claiming the trusts were valid only for the purpose of profiting for himself personally. He would have profited much more by acceding to the ruling of the Commissioner and taking over the trust property as his own. Mr. Ballou always insisted that the trusts were valid. There is nothing to indicate that they were not valid. If Mr. Ballou had proceeded to contest the payment of income tax through the Tax Court, such a question could not have been asked, for he would not have been obliged to pay the tax assessed against him to carry on proceedings to have it set aside in the Tax Court. But in order to secure an adjudication in the District Court, rather than in the Tax Court, he was required, first, to pay the assessed tax, and then to sue to get it back.

However, what we have said above goes only to emphasize the fact that the jury could, as a result of this interrogation by the Government counsel, have misapprehended the whole of the complicated case from the question asked, and the answer given.

Since, in my view, there was no substantial evidence that the trusts were invalid, or that the partnership, consisting of Mr. Ballou, Mrs. Ballou, and Mr. Ballou as trustee for the three trusts, was invalid, there were no facts to submit to the jury, and the verdict, unsupported by substantial evidence, should, accordingly, be set aside, the judgment reversed, and the case remanded for further proceedings, in accordance with this dissenting opinion.